Argued October 30, reversed November 20, 1917.

## STATE *v.* CANCELMO.*

(168 Pac. 721.)

**Criminal Law—Evidence—Intent.**

1. A party formally accused of an assault is competent to testify in respect to his intention as to the perpetration of the overt act with which he is charged.

**Assault and Battery—Intention—"Assault."**

2. An assault is an intentional attempt by one person by force or violence to do an injury to the person of another, coupled with a present ability to carry the intention into effect.

*For a discussion of the question as to whether pointing unloaded firearm at one constitutes assault with deadly weapon, see notes in 15 L. R. A. (N. S.) 1272; 41 L. R. A. (N. S.) 182.          REPORTER.

Assault and Battery—Criminal Prosecution—Instructions.

3. In a prosecution for assault with a dangerous weapon, the court erred in omitting from the definition of an assault the qualifying word "intentional," also in refusing to give a requested instruction containing such limiting word.

Assault and Battery—Criminal Prosecution—Instruction.

4. In a prosecution for an assault with a deadly weapon, the part of an instruction stating that no specific intent is necessary to constitute the crime charged was proper under the testimony that defendant was angry with a person other than the one actually shot, having fired an automatic pistol at a retreating automobile filled with people.

Assault and Battery—Specific Intent—Shooting at Automobile Filled with People.

5. In shooting his automatic pistol at a retreating automobile filled with people, one of whom was hit, defendant committed an assault with a dangerous weapon, though he did not have the specific intent to injure the particular person wounded.

[As to discharge of firearm to frighten person as assault, see note in Ann. Cas. 1917D, 617.]

Assault and Battery—Definition—Employment of "Unlawful."

6. The employment of the word "unlawful" is not necessary in defining the offense of assault.

Assault and Battery—Criminal Prosecution—Inference of Intent.

7. The intent with which an assault was committed may be inferred by the jury from the circumstances attending the perpetration of the overt act, notwithstanding defendant's testimony tending to excuse or explain his conduct on the particular occasion.

Assault and Battery—Criminal Prosecution—Instructions—Statute.

8. In a prosecution for assault with a deadly weapon, the jury should have been told that if they found from the testimony that defendant knowingly fired a revolver toward a retreating automobile full of people, they could conclude that his act was unlawful, and done with an unlawful intent, and, based upon such determination, also could conclude that defendant intended the ordinary consequences of his voluntary act, instead of an instruction that the law presumes that an unlawful act was done with an unlawful intent, and that the law presumes that a person intends the ordinary consequences of his voluntary act, presumptions declared by Section 799, subdivisions 2, 3, L. O. L.

From Malheur: DALTON BIGGS, Judge.

John J. Cancelmo was indicted, tried and convicted of assault, being armed with a dangerous weapon, and from the judgment imposed prosecutes this appeal. Reversed and new trial ordered.

In Banc.    Statement by MR. JUSTICE MOORE.

The defendant was accused by an indictment, the charging part of which reads:

"The said John J. Cancelmo on the 11th day of November, A. D. 1916, in the said County of Malheur and State of Oregon, then and there being armed with a dangerous weapon, to wit: a pistol loaded with powder and ball, did then and there unlawfully and feloniously assault one Edith Iredale with said dangerous weapon, by then and there unlawfully and feloniously shooting and wounding the said Edith Iredale with said dangerous weapon, he the said John J. Cancelmo being within shooting distance of her, the said Edith Iredale."

A plea of not guilty was interposed, and the defendant being tried was found guilty as charged, and appeals from the resulting judgment.

REVERSED.    NEW TRIAL ORDERED.

For appellant there was a brief over the names of *Mr. John L. Rand* and *Messrs. Davis & Kester,* with oral arguments by *Mr. Rand* and *Mr. George E. Davis.*

For the State there was a brief with oral arguments by *Mr. Ralph W. Swagler,* District Attorney, and *Mr. George M. Brown,* Attorney General.

MR. JUSTICE MOORE delivered the opinion of the court.

The testimony tends to show that the defendant is young and unmarried, and for some time prior to the alleged shooting had kept company with Miss Della Clark. She had informed him of a contemplated surprise party which was to have been given at Nyssa, Oregon, on the evening of November 10, 1916, and had invited him to attend on that occasion. Her parents,

however, objected to her selection of a possible suitor, whereupon the surprise party was abandoned and Miss Clark, accompanied by Ralph Fleming went in his automobile with others to a dance at a grange hall several miles distant.

After her arrival at the hall the defendant called her to the phone and in an angry tone of voice inquired why she had gone to the dance. For answer she invited him to come to the hall and she would explain her conduct in this particular. In referring to her action he said over the phone, "That is a dirty trick." The defendant and his brother Jesse, each with an automobile and accompanied by young men and women went to the grange hall. Upon their arrival the defendant censured Cecil Caldwell, who had gone to the dance in Fleming's car, with having misrepresented the facts about the surprise party.

The defendant and his brother, with the persons who had accompanied them, left the hall before Fleming started. As Jesse Cancelmo was returning one of the tires of his car was punctured and he was obliged to halt to repair the injury. The defendant's car following, came to a stand beside the automobile with the punctured tire, so that there was not sufficient room on the highway to admit the passage of another car. Thereafter Fleming coming up to about ten or twenty feet behind the standing cars, halted his automobile, whereupon Jesse Cancelmo and Bert Miller who was with him, going back to Fleming's car, attempted to cut its tires but did not succeed. Upon request the defendant's car was moved forward a short distance to allow Fleming's car to pass, and as it was doing so a young woman who accompanied the defendant, referring to Mr. Miller, another companion, laughingly said: "I don't think Bert made a good job cutting the

tire; let's shoot it." Thereupon the defendant, taking from his overcoat pocket a No. 38 Savage automatic revolver, which he usually carried, fired at the retreating car after it had attained quite a momentum, the bullet so discharged penetrating the back of the automobile and striking Edith Iredale, who was riding in the back seat, and nearly passed through the fleshy part of one of her lower limbs.

As tending to show a possible motive for the defendant's act, testimony was received to the effect that Miss Clark who rode on the front seat with Fleming, wore a cloak very similar to that which then enwrapped Miss Iredale, while their hats were alike, being trimmed in white fur, which apparel could not be distinguished in the semi-darkness caused by a cloud which then obscured the light of the moon.

The defendant alluding to the suggestion to shoot the tire, testified as follows: "I just thought I would scare them, like I was intending to shoot; that is, I didn't intend to shoot. I made it look that way; and the gun went off so quick, everything happened so suddenly I was surprised." His theory of the case at the trial was that the discharge of the revolver was the result of an accident without any intention upon his part even to injure the property of another. Based upon this state of the case, the court said to the jury:

3. "An assault has been defined to be an unlawful attempt, coupled with the present ability to do violence to the person of another. An assault with a dangerous weapon, which is the crime charged in this indictment, includes all of the elements of an assault as defined, with the added element that the assault must have been committed with a dangerous weapon.

5. "No specific intent is necessary to constitute the crime charged in this indictment, other than such as may be embraced in the act of making an assault with a dangerous weapon. This simply embraces the inten-

tional and unlawful use of a dangerous weapon, by means of which an assault is committed with such weapon upon the person of another.

6. "I instruct you, gentlemen, that the law presumes that an unlawful act was done with an unlawful intent. Also the law presumes that a person intends the ordinary consequences of his voluntary act. Both of these presumptions are disputable presumptions, and may be overcome by evidence which satisfies your minds to the contrary.

7. "Where a person does an act recklessly, without due caution or circumspection, without regard to the rights of others or the consequences of his act, resulting in an injury to another party, this would constitute an assault, even though, he did not intend directly to do harm to the party injured. Therefore if you find in this case that the defendant recklessly, without due caution or circumspection and without regard to the rights of others, fired a shot which resulted in an injury to Edith Iredale, then this would constitute an assault, even though the shot was not aimed at the party injured and was not fired with the direct intention of injuring her or anyone else."

An exception was taken to each of these instructions, and also to the court's refusal to charge the jury at defendant's request, as follows:

"I instruct you that under the law of this state an assault is an intentional attempt by one person by force or violence to do an injury to the person of another, coupled with the present ability to carry that intention into effect.

"To constitute an assault there must be an intention or purpose by force or violence to do an injury to the person of another, and before you can find the defendant guilty in this case, you must first find from the evidence that there was an intention or purpose on the part of the defendant at the time when the gun was discharged to injure or harm the person of another; and if you find from the evidence that at the time the gun was discharged the defendant did not intend to

shoot anyone or to do any injury or harm to the person of anyone, then you must find the defendant not guilty.''

In *State* v. *Selby,* 73 Or. 378, 386 (144 Pac. 657), Mr. Justice RAMSEY in deciding that the word ''unlawful'' was not essential to a proper description of the term ''assault,'' after reviewing the observations of several authors upon the subject, defines the offense as follows:

''An assault is an intentional attempt by one person by force or violence, to do an injury to the person of another, coupled with a present ability to carry that intention into effect.''

In *State* v. *Godfrey,* 17 Or. 300, 305 (20 Pac. 625, 111 Am. St. Rep. 830), Mr. Justice STRAHAN in considering a requested instruction, which omitted the limiting word ''intentional'' in an attempted definition of the crime of assault, reviews many decisions of the courts of last resort and says:

''I think these authorities clearly show that to constitute an assault there must be an intentional attempt to do injury to the person of another by violence, and that such attempt must be coupled with a present ability to do the injury attempted.''

To the same effect see *Stark* v. *Epler,* 59 Or. 262, 267 (117 Pac. 276). In 2 R. C. L. 525, it is said:

''An assault is a demonstration of an unlawful intent by one person to inflict immediate injury on the person of another then present.''

At page 529 of that volume, it is observed:

''In a prosecution for a criminal assault * * it is essential to the maintenance of the proceeding that it shall be made to appear that the aggressor had the present intention of inflicting personal injury on the person assaulted.''

On the following page it is further remarked:

"It must be kept in mind that in all cases it is necessary to show that the act resulting in the assault and battery was done intentionally, and not accidently or negligently, because if the act was the result of an accident or of negligence, no criminal liability could arise, and the discussion herein goes merely to the intention with which an act was done."

"An assault," says another text-writer, "is any attempt or offer, with force or violence, to do a corporal hurt to another, whether from malice or wantonness, with such circumstances as denote, at the time, an intention to do it, coupled with a present ability to carry such intention into effect": 3 Cyc. 1020.

1. A party to a criminal action, who is formally accused of the commission of an assault, is competent as a witness to testify in respect to his intention as to the perpetration of the overt act with which he is charged: 2 R. C. L. 566; Underhill Crim. Ev. (2 ed.), § 354.

2, 3. The word "intentional" necessarily qualifies the word "attempt" as used by this court in the definition of assault: *State* v. *Selby*, 73 Or. 378, 386 (144 Pac. 657).

In giving the third instruction an error was committed in omitting such qualifying word from the definition of an assault, and also in refusing to give the requested instruction which contained that limiting word.

4, 5. That part of the fifth instruction which states that "no specific intent is necessary to constitute the crime charged in this indictment," was proper under the testimony received at the trial of this cause. From a consideration of the remaining part of that instruction, however, it would seem that the word "specific" used to qualify the word "intent" as first employed, was not made plain to the jury. In shooting a re-

volver at a retreating automobile filled with people, one of whom was hit with a bullet, it is not necessary to show that the assailant intended to assault the particular person so shot, and under the circumstances adverted to, evidence of a specific intent was unnecessary.

In illustrating this legal principle a copious extract is made from the case of *People* v. *Raher,* 92 Mich. 165, 166 (52 N. W. 625, 31 Am. St. Rep. 575), where Mr. Justice GRANT, discussing this subject, says:

"The respondent was convicted of an assault with intent to do great bodily harm, less than murder, upon the person of one John Peterson. Other persons besides Peterson were standing near when the respondent fired a revolver, wounding Peterson in the head. The court was requested to instruct the jury that they must find the specific intent to assault Peterson. This request was refused, and the court instructed them that, if respondent shot into the crowd with the intention to wound any of them, he might be convicted, notwithstanding he had no specific intent against Peterson. It has been held that where a prisoner fired a gun in the direction of a crowd, he was guilty of an assault upon each: *State* v. *Nash,* 86 N. C. 650 (41 Am. Rep. 472) ; *State* v. *Myers,* 19 Iowa, 517; *Smith* v. *Commonwealth,* 100 Pa. St. 324. In *Smith's Case,* Dears. Cr. Cas. 559, the prisoner shot at A., supposing him to be B., and intending to kill B. He was held properly convicted of assault with intent to murder."

In *State* v. *Baker,* 20 R. I. 275 (38 Atl. 653, 78 Am. St. Rep. 863, 866), it was held that firing a pistol in the direction of another, within the distance in which it might do execution, with the intention of frightening him, or with the intention of wounding him, were equally assaults. In deciding that case it is said:

"Among the cases which hold that it is an assault to point a loaded weapon at a person, or to recklessly fire

a pistol in the direction of another, see *Morgan* v. *State,* 33 Ala. 413, 414; *United States* v. *Kierman,* 3 Cranch C. C. 435 (Fed. Cas. No. 15,529) ; *State* v. *Shepard,* 10 Iowa, 126, 130; *Crow* v. *State,* 41 Tex. 468, 471, 472, and *Meader* v. *Stone,* 7 Met. (Mass.) 147, 151.''

6. The fifth instruction, though possibly cured by the seventh, seems to emphasize the omission of the word ''intentional'' which should have been employed instead of the word ''unlawful'' which was used in the third instruction to qualify the word assault. The employment of the word ''unlawful'' is not necessary in defining that offense: *State* v. *Selby,* 73 Or. 378, 386 (144 Pac. 657).

7. The intent with which an assault is committed may be inferred by the jury from the circumstances attending the perpetration of the overt act, notwithstanding testimony given by the accused tending to excuse or explain his conduct on the particular occasion, but the intentional attempt of the party charged with the offense to do injury to the person of another by force or violence, coupled with a present ability to carry that design into effect, is an indispensable ingredient of the definition of an assault.

8. The presumptions stated in the sixth instruction are declared by Section 799, subdivisions 2 and 3, L. O. L. These deductions, which the law expressly directs to be made from particular facts, are generally applicable, but instead of asserting the first presumption so asserted, the jury should have been told that if they found from the testimony received, the defendant knowingly fired a revolver toward the retreating automobile, under the circumstances detailed, they were authorized to conclude that his act was unlawful and done with an unlawful intent, and based upon such determination they were also authorized to conclude

that the defendant intended the ordinary consequences
of his voluntary act.   By this means a presumption is
not based upon a presumption, but upon a fact legally
established.   Any other conclusion might possibly lead
to very serious consequences, whereby a party could
be convicted of the commission of an offense, the per-
petration of which he never contemplated.   Thus, two
intimate friends might be hunting in the brush out of
season at different places near each other, and one
thinking he saw a deer shot at it, which act would be
unlawful.   What he supposed to be a deer proved to
be his companion whom he killed.   The overt act pro-
ducing the death, while evidencing great carelessness,
was not knowingly performed, and hence the deduction
would not follow that the person firing the shot in-
tended the ordinary consequences of his voluntary act.
Thus in *State* v. *Richardson* (Iowa), 162 N. W. 28
(L. R. A. 1917D, 944), it was held that one striking an-
other in a highway with a defective automobile which
he was driving in excess of the statutory speed limit,
without lights, in the dark and storm, could not, under
the theory that one intended the natural consequences
of his act, be convicted of assault with intent to inflict
great bodily injury, if he did not know of the presence
of the injured person, or have any intent to injure him.

An error was also committed in giving the sixth in-
struction.   The judgment is therefore reversed and a
new trial ordered.                          REVERSED.