Submitted on briefs June 15, writ allowed July 6, rehearing denied July 27, 1926.

In re Application of A. J. DAVIS for Writ of Habeas Corpus.

(247 Pac. 809.)

**Habeas Corpus—Return Which Did not have Copy of Commitment Annexed, nor Plead Ordinance Authorizing Petitioner's Punishment for Violating Plumbing Ordinance, Held Demurrable, (§ 634, Or. L.).**

1. Return to writ of *habeas corpus*, sued out by one serving jail sentence for violating city plumbing ordinance, which did not have copy of commitment annexed to it as required by Section 634, Or. L., nor plead ordinance authorizing penalty for failure to comply with plumbing ordinance, which did not provide such penalty itself, *held* demurrable.

**Habeas Corpus—Discharge of Petitioner Authorized on Habeas Corpus Only Where Proceeding is Void for Illegality.**

2. Writ of *habeas corpus* cannot be used as writ of error or instead of appeal, and discharge of petitioner is authorized only where proceeding is void for illegality.

**Municipal Corporations.**

3. Courts are not bound by forms, but must look at substance of things, in deciding whether ordinance is proper exercise of police power.

**Licenses.**

4. While regulation of plumbing and mode of its construction are within police power, especially in cities where population is congested, regulation must bear some reasonable relation to public health.

———

1. See 12 R. C. L. 1237.
2. See 12 R. C. L. 1185.
4. Regulation of plumbers, see notes in 129 Am. St. Rep. 271; 20 L. R. A. 724. See, also 17 R. C. L. 550.

**Licenses—It is Within Police Power to Require Plumbers to Give Security to Those Affected by Their Operations.**

5. It is within police power to require plumbers to give security to those affected by their operations, to protect latter from damages arising out of their delinquencies.

**Licenses—Police Power Held not to Authorize Punishment of Plumber for Allowing Another, Whom He Did not Directly Pay, to Work Under His License.**

6. Police power *held* not to authorize ordinance prohibiting plumber from allowing another, whom he did not directly pay, to work under his license, where ordinance required licensee to give bond, since he would be liable for other's failure to properly perform work.

Constitutional Law, 12 C. J., p. 951, n. 54.
Habeas Corpus, 29 C. J., p. 19, n. 41, p. 25, n. 4, p. 27, n. 6, p. 37, n. 62, p. 159, n. 48, 54, p. 160, n. 59.
Master, 38 C. J., p. 1385, n. 67.
Master and Servant, 39 C. J., p. 56, n. 80.
Municipal Corporations, 28 Cyc., p. 709, n. 95.

Original proceeding for writ of *habeas corpus.*

WRIT ALLOWED. REHEARING DENIED.

For petitioner, *Mr. W. Y. Masters.*

For defendant *L. V. Jenkins, Mr. Frank S. Grant,* City Attorney, *Mr. James R. Bain* and *Mr. R. A. Imlay,* Deputies City Attorney.

. *Messrs. Lewis, Lewis & Finnigan, Amicus Curiae.*

BURNETT, J.—Claiming to be unlawfully restrained of his liberty by the chief of police of the City of Portland, the petitioner sued out a writ of *habeas corpus* in this court under the authority of Article VII, Section 2-b, of the Constitution of Oregon, authorizing the Supreme Court, in its discretion, to take original jurisdiction, among others, in *habeas corpus* proceedings. The return to the writ recites that the City of Portland is a municipal corporation; that the defendant, L. V. Jenkins, is its duly ap-

pointed, qualified and acting chief of police, keeper of the city prison, and custodian of all persons incarcerated therein. The return goes on further to recite by title the existence of a certain ordinance relating to master plumbers. As we may under authority of *In re Davenport,* 114 Or. 650 (236 Pac. 758), we condense from a full copy of the ordinance set forth in defendant's brief as follows:

Section 1 defines the term "master plumber" to be any person, firm or corporation who engages in the business, in the City of Portland, of furnishing labor and material or labor only in the placing, installation or construction of pipes, fittings, fixtures or other things in any building or elsewhere, for conducting water or sewage, either by contract, subcontract, day work or otherwise. The same section says that it shall not apply to any person who works at the trade of plumbing as journeyman if such person is employed by a licensed and bonded master plumber.

Section 2 of the ordinance authorizes an owner to perform work in or about his own building, or a member of his family may do the work, without being subject to the provisions of the ordinance, provided that on examination before the chief inspector of plumbing, he shows that he is qualified to do the work.

Section 3 requires anyone engaged in the business of master plumber to execute a bond in favor of the city conditioned: 1. That in the construction, installation, alteration and repair of plumbing or drainage work, the principal will comply with all ordinances of the city, and that any person injured by a failure so to comply with such ordinances may have a right of action on said bond in his own name within one year after the completion of such work,

limiting the liability of the surety to the sum of $2,500; 2. That in the performance of such work, all reasonable care and skill should be taken to prevent a waste of city water, with liability limited to $500; and 3. That when it becomes necessary to disturb pavement, the principal shall replace the same in as good condition as it was before, subject to liability not exceeding $1,000.

Section 4 is here set down in full as it appears in the ordinance and in the return to the writ:.

"Section 4. No Other Person to Use License. No person, firm or corporation licensed and bonded under the provisions hereof shall authorize or permit any other person, firm or corporation to engage in or carry on any plumbing business or work under such license and bond in the name of such licensed master plumber or otherwise, except journeymen plumbers who are employed by such master plumber."

The fifth and final section of the ordinance requires anyone applying for a license, or any owner doing any plumbing work, to agree to comply with all ordinances of the city regulating plumbing, water and sewage, and with the provisions of the building and housing codes relating to plumbing.

It will be noted that there is no penalty provided in this ordinance for a violation thereof. By its terms, the only result of any shortcoming in operating under it would be to give rise to a cause of action on the undertaking. The return goes on to state that on December 3, 1925, a complaint was filed in the municipal court against the petitioner, charging him with a violation of Section 4 of the ordinance last above quoted, in that he did:

" * * on November 18, 1925, in the City of Portland aforesaid, wilfully and unlawfully permit an-

other person, to wit: One R. J. Conroy, to carry on
plumbing work in a building at 342 Yamhill Street,
Portland, Oregon, under the license and bond and
in the name of the defendant; defendant being a
licensed Master Plumber and said R. J. Conroy not
being a journeyman plumber employed by the de-
fendant.''

It is said that the petitioner was arrested, that he
filed a demurrer to the complaint, which was over-
ruled; that he was convicted and sentenced before
one of the judges of the Municipal Court to pay a
fine of $50, or in lieu thereof to serve twenty-five
days in the city jail; that, on appeal to the Circuit
Court of the State of Oregon for Multnomah County,
the demurrer was again overruled and the petitioner,
being found guilty by the court as charged in the
complaint, was sentenced to pay a fine in the sum of
$25, or in lieu thereof to serve 12½ days in the city
jail. Concluding the return, the defendant says that
a commitment was duly issued out of the Circuit
Court for Multnomah County, remanding the peti-
tioner to the custody of the defendant to serve said
sentence of 12½ days in the city jail, he having
failed and refused to pay the fine, and that on April
14, 1926, he surrendered himself into the custody of
the defendant and has been there ever since, the term
not having expired since the date of his surrender.

1. The commitment itself has not been exhibited to
the court nor was a copy thereof annexed to the
return, as required by Section 634, Or. L. No ordi-
nance giving authority to the Municipal Court of the
City of Portland to fine or imprison the petitioner for
any failure to comply with the ordinance relating to
plumbing has been pleaded, and, as stated, there
is no penalty beyond enforcement of the undertaking

laid down in the ordinance itself. For this reason, as well as for the fact that no copy of the commitment under which the defendant professes to hold the petitioner has been annexed to the return, or exhibited to this court, the general demurrer to the return could well be sustained. Both parties, however, have argued the case in their briefs upon what they deem to be the real merits of the controversy, the petitioner contending that the regulation prescribed by the ordinance is not a competent exercise of the police power so as to authorize the imprisonment of the petitioner.

2. As taught in *Ex parte Foster*, 69 Or. 319 (138 Pac. 849), the writ of *habeas corpus* cannot be used as a writ of error or instead of an appeal. It is true that the errors relied upon could have been urged if an appeal would lie from the judgment of the Circuit Court to this court. However, treating of this subject in *Barton* v. *Saunders*, 16 Or. 51 (16 Pac. 921, 8 Am. St. 261), Mr. Chief Justice LORD contrasted the irregularity of statement of the matter relied upon and the utter illegality of the same, and proceeded:

" * * 'But,' says Mr. Hurd, 'a proceeding defective for irregularity and one void for illegality may be reversed upon error or *certiorari,* but it is the latter defect only which gives authority to discharge on *habeas corpus.*' (Hurd on Habeas Corpus, p. 327).

"Errors or irregularities which render proceedings voidable merely, the writ of *habeas corpus* cannot reach, but only such defects in substance as renders the process or judgment absolutely void. An irregularity is defined to be 'the want of adherence to some prescribed rule or mode of proceeding, and it consists either in omitting to do something that is

necessary for the due and orderly conducting of a suit, or doing it in an unreasonable time or improper manner.' (Tidd's Prac. 434.)    'It is the technical term for every defect in practical proceedings, or the mode of conducting an action or defense, as distinguished from defects in pleadings.    On the other hand, illegality is properly predicable of radical defects only, and signifies that which is contrary to the principles of law as distinguished from mere rules of procedure.    It denotes a complete defect in the proceedings.'    (Tidd's Prac. 435; Hurd on Habeas Corpus, 333.)  *  *  Where the matter is itself insufficient, without reference to the manner of stating it, it goes to the substance, but where it goes to the manner of stating it, the defect is merely formal.''

3. The only basis or sanction, if any, for the ordinance in question is the police power and it is essential to its validity, in the feature in which it is attacked, that it must have some bearing upon or relation to the promotion of the health, convenience, safety or welfare of the people affected by the ordinance and must not violate any constitutional right.    As a landmark for the guidance of the courts in the consideration of such questions, we here set down what was said by Mr. Justice HARLAN in *Mugler* v. *Kansas,* 123 U. S. 623, 661 (31 L. Ed. 205, 8 Sup. Ct. Rep. 273, see, also, Rose's U. S. Notes):

''The courts are not bound by mere forms, nor are they to be misled by mere pretenses.    They are at liberty—indeed, are under a solemn duty—to look at the substance of things, whenever they enter upon the inquiry whether the legislature has transcended the limits of authority.    If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law,

it is the duty of the courts to so adjudge, and thereby give effect to the Constitution.''

4, 5. It may well be conceded that, especially in cities where the population is congested, the regulation of plumbing and the mode of its construction are objects well within the police power, for the public health may be seriously affected by inferior plumbing. But the regulation itself must bear some reasonable relation to the public health. We may well say also that it is within the scope of the police power to require that those engaged in the business, as contractors or otherwise, should give security to those affected by their operations to save them harmless from damages arising out of the delinquencies of the former.

6. The essence of the charge against the petitioner is that he, being a master plumber, otherwise a purveyor of labor and material in the plumbing business, allowed someone to work under his license whom he did not directly pay. It is not conceivable how the public health, safety, convenience or welfare is affected by the payment of the workman. The laborer himself may be concerned about whether or not he receives his pay but the health, safety, convenience or welfare of the public is not influenced in any degree by whether or not the laborer is compensated. If, as stated in the return, the petitioner allowed Conroy to work under the petitioner's license and bond, the latter adopted his services as those of an employee or agent and would be liable for any failure on his part properly to perform his work. On the other hand, if this constituted a violation of the ordinance, anyone damaged thereby would have an action against the petitioner and his surety on the bond, conditioned

that the principal "comply with all the ordinances of the City of Portland regulating such work." It is the quality of the work and not the source of its recompense which relates to the public health, safety or convenience. Thus far the matter may be regulated under the police power; to go further is to interfere with the right of contract and the right to work at a lawful employment.

Irrespective of the defects in the return, already noted, the position assumed by the defendant is obnoxious to the principles of police power. The petitioner should be discharged and it is so ordered.

WRIT ALLOWED. REHEARING DENIED.