Argued October 26, affirmed December 30, 1955, petition for
rehearing denied January 25, 1956

## SMALLMAN *v.* GLADDEN
291 P. 2d 749

*Merlin Estep,* Salem, argued the cause for appellant. On the brief were Hewitt, Estep & Sorensen, Salem.

*Lloyd G. Hammel,* Assistant Attorney General for Oregon argued the cause for respondent. With him on the brief was Robert Y. Thornton, Attorney General for Oregon.

BRAND, J.

The plaintiff filed a petition for a writ of habeas corpus in the Circuit Court of the State of Oregon for

Marion County. The defendant Gladden as warden of the penitentiary made his return against which the plaintiff filed an amended and supplemental traverse. The defendant demurred to portions of the traverse and filed a general denial as to the rest. The demurrer was sustained. Thereafter the issues of fact were tried by the court. The proceeding was dismissed and the defendant was remanded to the custody of the defendant. Plaintiff appeals.

The return to the writ is in usual form. It sets forth the judgment of conviction under the authority of which the defendant was holding the plaintiff as a prisoner. The judgment reads as follows:

"Now, on this day comes the State of Oregon, by Ben C. Flaxel, District Attorney, and the defendant above-named, in person, the said Claude Revington Smallman having heretofore duly entered his plea of GUILTY of the crime of assault with intent to kill and said defendant waived further time and asked the Court to pronounce judgment against him at this time, no motion having been filed in arrest of judgment, the said defendant being asked by the Court if he had anything to say why judgment should not be pronounced against him answered, showing no good or sufficient cause.

"IT IS, THEREFORE, CONSIDERED, ORDERED AND ADJUDGED, by the Court, that said defendant be confined in the penitentiary of this state, a prisoner, and there kept a prisoner for a maximum period of Twenty (20) Years.

"Dated November 4, 1947."

In his traverse the plaintiff admits that he is in custody of the warden and denies the other allegations of the return except as specifically admitted or alleged. Plaintiff alleges that he was arrested on 25 October 1947, charged with assault with intent to kill, and that

he made no appearance in the circuit court or before any judge thereof except on 4 November when sentence was imposed. Plaintiff then alleges substantially all recognized grounds for holding that the proceedings were violative of constitutional rights. The allegations may be summarized as follows: He was subjected to torture; he was threatened with long-continued incarceration without trial unless he would waive grand jury investigation and his right of counsel; he was at all times denied counsel or contact with counsel; to avoid torture he signed a waiver of indictment and agreed not to ask for counsel, and to plead guilty; he was "rushed" into court "whereupon the presiding judge, after asking plaintiff a few questions, imposed sentence upon him"; he was then "in great pain and in an advanced state of fatigue"; he was not guilty of the crime charged. The defendant warden denied the allegations. The charges, if proven true, would classify the case as on a par with the most perverted and depraved practices of the Nazi judicial system at its worst.

The issues were tried. Counsel for plaintiff expressly conceded that the question of guilt or innocence was not before the court. Plaintiff identified no one who committed the alleged acts of coercion and torture. He admitted he knew of his right to counsel. He admitted he signed the waiver. He admitted he knew the effect thereof. He understood he had waived his rights. He admits a lawyer consulted with him. His arrest was on 25 October 1947, at which time he claims he was grossly intoxicated. The record shows that on 28 October an information was filed in justice court charging assault with intent to kill. An order was made fixing his bail and committing him to the cus-

tody of the sheriff. The order is in evidence and contains the following recitals:

"That on October 28, 1947, the Defendant appeared in this Court on the above charge. Defendant was informed of the charges against him and of his right to the aid of counsel before any further proceedings were had. Defendant waived his right to have an attorney, and said that he did not want an attorney. The rights of the Defendant were duly explained to him after the Information was read to him and the charge explained. The Defendant said that he did not desire to have a preliminary examination; that he wanted to waive everything in this court; that he did not care to have witnesses called, and did not desire to make a statement; that he wanted his case disposed of as soon as possible without waiting for the Grand Jury."

On 4 November plaintiff signed a waiver of grand jury indictment and consented to the filing of an information. The instrument was acknowledged in usual form by the county clerk. We quote from the signed waiver:

"COMES NOW Claude Revington Smallman the above named defendant and being of the age of — years, and after being fully advised of and well knowing his right to Grand Jury investigation and to be tried in this Court upon the charge of Assault with Intent to Kill only after the return by the Grand Jury of Coos County, Oregon, of an Indictment charging him with such offense, unless he waive the same, and

"WHEREAS, the said Claude Revington Smallman, defendant, is charged by an information filed in the Justice's Court for Justice of the Peace and Constable District Number 2 for Coos County, Oregon, with the crime of Assault with Intent to Kill and has been duly held to answer by said magistrate and which said charge on said information is

now pending action of the Grand Jury of Coos County, Oregon.

"NOW THEREFORE, the said Claude Revington Smallman, being fully advised as above set forth and being accused as hereinabove stated, does hereby freely and voluntarily in open Court and also by this, his written waiver by him duly signed and executed, hereby waive and relinquish his right to investigation by the Grand Jury of Coos County, upon the said information and charge and does hereby consent that the District Attorney for Coos County, Oregon, may file an information in the Circuit Court of the State of Oregon for Coos County charging him with the said crime and does hereby by this written waiver and appearance herein, agree that he may be tried upon the said charge upon such information to be filed by the District Attorney of Coos County, Oregon.

"* * * * * *."

The trial judge made an order on the waiver reciting in part that the defendant (plaintiff here) "now, in open court, states that he waives the finding and presentment of an indictment * * *", etc. Another journal entry signed by the trial judge recites that the defendant "being now in Court * * * was by the Court informed of his right to counsel * * * but waived his right to counsel", and also that defendant "waives all further time * * * and prays the Court to answer at this time." A third journal entry recites his waiver of right to counsel, and his plea of guilty.

■ Testimony of the former county clerk, the then district attorney, the sheriff, and the lawyer who consulted with defendant, was heard in the habeas corpus proceedings in the circuit court of Marion County. Officers denied any acts of violence and testified that they had no knowledge of any misconduct. They verified, though it was unnecessary to do so, the recitals

in the journal entries. *Huffman v. Alexander,* 197 Or 283, 251 P2d 87, 253 P2d 289. They contradicted other statements of the plaintiff. The only witness at the Marion County hearing who partly corroborated small portions of plaintiff's testimony was a former inmate of the county jail, who testified that he was a trusty. This was denied by the sheriff.

The evidence was such that the trial court was warranted in finding that the plaintiff was unworthy of belief and, in an opinion, it held that the plaintiff "has failed to establish his case by a preponderance of the evidence" and that the habeas corpus proceedings should be dismissed. It was so ordered.

■ Three assignments of error are submitted as to the portion of the case involving the trial on the merits. They assert error in regard to (1) the decision on the waiver of indictment, (2) waiver of right to counsel, and (3) waiver of right to trial by jury. The plaintiff had the burden of impeaching the validity of the process under which he was being held. *In re Application of Loundagin,* 129 Or 652, 278 P 950; *Anderson v. Alexander,* 191 Or 409, 229 P2d 633, 230 P2d 770. The proceeding is in the nature of an action at law resulting in a judgment. The statute provides for appeal "in like manner and with like effect as in an action." ORS 34.710. The credibility of the plaintiff and his witness was for the trial court. Its decision on the facts is conclusive here.

■■ The other issues in this case relate to the orders of the trial court sustaining demurrers of the defendant to several affirmative pleas in the plaintiff's traverse by which plaintiff sought to impeach the validity of the judgment of conviction set forth in the return of the warden. The issues will be considered in the light of the well-established rule that unless it is made to

appear that the judgment was absolutely void no relief can be had in habeas corpus. Mere errors or irregularities which render the proceedings merely voidable can not be reached by this procedure. ORS 34.330; *Ex parte Tice,* 32 Or 179, 182, 49 P 1038; *Ex parte Foster,* 69 Or 319, 138 P 849; *In re Application of Davis,* 118 Or 693, 247 P 809; *Kelley v. Meyers,* 124 Or 322, 263 P 903; *In re Application of Loundagin,* 129 Or 652, 278 P 950; *Ex parte Packer,* 136 Or 159, 298 P 234; *Archerd v. Burk,* 148 Or 444, 36 P2d 338; *Rust v. Pratt,* 157 Or 505, 72 P2d 533 (appeal dismissed, 303 US 621, 82 L ed 1084); *Garner v. Alexander,* 167 Or 670, 120 P2d 238 (Certiorari denied, 316 US 690, 86 L ed 1761); *Macomber v. State et al.,* 181 Or 208, 217, 180 P2d 793. Furthermore, the allegations in a petition for a writ must be specific in stating the facts indicative of a violation of due process of law. The same rule should apply in testing the traverse, especially when petitioner is represented by counsel. See *Ex parte Anderson,* 191 Or 409, 229 P2d 633, 230 P2d 770. It is also held that if it be found that petitioner is lawfully detained at the time of the hearing, he is not to be discharged for defects in the original warrant or commitment. *Guiney v. Bonham,* 261 F 582, 8 ALR 1282.

Plaintiff challenges the conviction upon the ground that the information fails to state facts sufficient to charge assault with intent to kill. The relevant statute provides:

"Any person who assaults another with intent to kill, rob, or to commit rape upon such other, or to commit any of the crimes specified in ORS 163.-230, shall be punished   *   *   *." ORS 163.270.

Specifically, counsel argues that the information is defective because it is not alleged that the defendant

therein "intended to kill the person assaulted." The information reads, in part, as follows:

> "That said Claude Revington Smallman * * * did then and there with a certain 38 caliber revolver unlawfully and feloniously assault one Gladys M. Smallman by then and there unlawfully and feloniously shooting her the said Gladys M. Smallman with said loaded revolver with intent on the part of him the said Claude Revington Smallman to then and there kill and murder * * *."

The ancient and highly technical forms of pleading in criminal actions have been abolished. ORS 132.510. The statutory requirement is that an indictment or information contain:

> "* * * * * *
>
> "(2) A statement of the acts constituting the offense in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended." ORS 132.520. See also, ORS 132.540; *State v. Branton*, 49 Or 86, 88, 87 P 535; *State v. Minnick*, 54 Or 86, 102 P 605.

The statute also provides that:

> "No indictment is insufficient, nor can the trial, judgment or other proceedings thereon be affected, by reason of a defect or imperfection in a matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits." ORS 132.590.

Again, it is provided that:

> "When a crime involves the commission of or an attempt to commit a private injury and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the person injured or intended to be injured is not material." ORS 132.630.

■ The sufficiency of the information is to be determined solely from an inspection of the instrument. The portion of the traverse, as to which the demurrer was sustained, makes no claim that this was a case in which a defendant intended to murder one person but shot another, or assaulted one person and wounded another. The vital question is whether the information is fatally defective because it omitted an allegation that the defendant intended to kill and murder the person whom he assaulted and shot. Specifically, the question is whether the information was sufficient to enable a person of common understanding to know what was intended and whether the omission tended to prejudice the substantial rights of the defendant *"upon the merits."* If the information had added the words "her the said Gladys M. Smallman" after the portion of the information quoted supra, there would have been no question as to the sufficiency of the indictment, even under the old rules of criminal pleading.

■ The information charges that the named defendant feloniously assaulted Gladys M. Smallman. An assault is an intentional attempt by one person by force or violence to do an injury to the person of another, coupled with present ability to carry the intention into effect. *State v. Selby* 73 Or 378, 144 P 657; *State v. Cancelmo,* 86 Or 379, 168 P 721; *State v. Linville,* 127 Or 565, 273 P 338; *State v. Olsen,* 138 Or 666, 7 P2d 792; *State v. Carroll,* 155 Or 85, 62 P2d 830.

In 2 RCL 529, and in 4 Am Jur, Assault and Battery, § 6, p 129, we find the following:

> "In a prosecution for criminal assault, it is essential to the maintenance of the proceeding that it shall be made to appear that the aggressor had the present intention of inflicting personal injury on the person assaulted."

The foregoing was quoted with approval by this court in *State v. Cancelmo,* supra.

If an assault involves an intention to injure the person assaulted, then when the defendant assaulted his wife, *he intended to injure her*—not some one else, and, if he assaulted her with a revolver, he must have intended to injure her with it. If he assaulted and shot her and did it with intent to kill and murder, we think any one above the level of a moron would understand that the defendant was charged with intending to kill the person whom he intended to injure and whom he "feloniously" shot.

The defense will hardly be so bold as to argue that a person who assaulted A by shooting him, intended to kill B. We conclude that the demurrer to this portion of the traverse was properly sustained. It is therefore unnecessary to add that even if the information were such as would be held bad on direct appeal, this proceeding is a collateral attack and the rules governing in the case of appeal are not applicable. 25 Am Jur, Habeas Corpus, § 43, p 175.

The defendant cites *State v. Branton,* 49 Or 86, 87 P 535; *State v. Rosasco,* 103 Or 343, 205 P 290; *State v. Dormitzer,* 123 Or 165, 261 P 426; *State v. Burke,* 126 Or 651, 269 P 869, 270 P 756. These cases merely set forth the rule as established by constitution and statute. None of them were concerned with the sufficiency of an information in any way resembling the one in the pending case. In the Dormitzer case, supra, after stating the requirements of an indictment, the court took pains to add that the constitutional provision "does not prevent the simplification of a criminal pleading by the abolition of verbiage and the technical forms of the ancient law."

The defense has cited some early cases in which

the indictment charged that defendant assaulted A with intent to kill A but in which the proof showed that defendant had shot at B intending to kill B, though he in fact hit A. The cases cited adopt a subtle distinction between assault with intent to kill and assault with intent to murder, and hold that defendant could not be convicted of assault with intent to kill a named person on proof that he intended to kill a different person.

The cases on this issue are in conflict. See 26 Am Jur, Homicide, § 602. These cases involve a question of variance between pleading and proof. They are not determinative in the case at bar. The only question here relates to the sufficiency of the information. The traverse as to which the demurrer of the warden was sustained contains no allegation that defendant shot at one person and hit another or even that any other person was involved in any way. Defendant was charged with assaulting Gladys Smallman and it shows that he feloniously shot the person whom he assaulted, to wit, Gladys Smallman. If he intended to kill any one, it must have been the person whom he intended to injure by shooting and whom he shot. No motion or demurrer challenged the information and defendant pleaded guilty to that charge.

■ *State v. Mulhall,* 199 Mo 202, 97 SW 583, is typical of the cases involving variance between indictment and proof. It was decided in 1906 and brings together many of the early cases on which the defendant relies, including, *Jones v. State of Mississippi,* 11 Smedes & M 315 (1848) ; *Barcus v. State,* 49 Miss 17, 19 Am Rep 1 (1873) ; *Commonwealth v. Morgan,* 74 Ky 601 (1876). The information charged that the defendant assaulted one Morgan with malice aforethought, intend-

ing to kill Morgan. The trial court instructed in effect, that the defendant might be convicted on proof that he shot at and assaulted Reed, intending to kill him, but hit Morgan. The instruction was held to be erroneous. These cases are distinguishable. In the pending case the defendant assaulted and shot the very person named in the information. In any event, habeas corpus is not a proper remedy by which to challenge the sufficiency of the information eight years after conviction. We hold that the information was sufficiently definite to satisfy the requirements of the Constitution and it certainly charged the commission of a crime. The defendant cites one case in which an indictment for assault with intent to kill was held indefinite for failing to allege an intent to kill the person shot at.

In *Jones v. The State of Mississippi,* supra, the court said that the indictment was "framed under the statute (H. & H. 698, sec. 39,) which runs against any person shooting at another, with intent to kill such other person." It will be observed that the indictment differs in two important particulars from the information in the case at bar. It charged that the shooting was with malice aforethought and, more important, it did not anywhere allege that the defendant "assaulted" the person whom he shot, the employment of which word would have supplied the element of intent to harm such person. The case reflects the technicalities of the ancient common-law pleading. We reject it as authority in this case. We are not holding that the defendant could have been convicted on this information if the evidence had shown that he assaulted and shot one person but hit another. That question is not before us. We are holding that the information to which the defendant pleaded guilty sufficiently charges that the intent to kill was directed against the

person whom he assaulted with a pistol, and shot, and whom he intended to injure.

The next assignment of error is directed at the constitutionality of the statute upon which the charge was brought. By reason of a slight change in phraseology which was made in the Oregon Revised Statutes (ORS 163.270), in regard to penalty, we will set forth the statute as it was at the time of the alleged act. It then read:

"If any person shall assault another with intent to kill, or rob, or to commit rape upon such other, or to commit any of the crimes specified in section 23-422, such person, upon conviction thereof, shall be punished by imprisonment in the penitentiary during the life of such person or for a period of not less than one nor more than twenty years." OCLA, § 23-427.

The defendant's contention is that the statute is not reasonably definite and certain as to the punishment intended to be prescribed.

Counsel for the plaintiff concede that no problem would have arisen if the statute had remained as it was prior to 1919. Up to that time the punishment was imprisonment in the penitentiary not less than one nor more than ten years. Counsel says that its meaning then was "indisputably clear". Counsel argues that

"The statute seems to provide alternative maximum sentences for each of the crimes therein specified without prescribing or indicating any basis whatever for classification, or determination by the trial judge of which maximum applies in any particular case. * * *"

We are unable to follow this reasoning.

The statute purports to leave the determination of the term of the imprisonment to the discretion of

the trial judge as is done in substantially all criminal statutes in Oregon. The only maximum punishment is life imprisonment. The minimum is one year. If the maximum is not imposed, then the court may in its discretion sentence the defendant to any term between one and twenty years. It was for the legislature alone to say whether a sentence of more than twenty years but less than life should be authorized. The statute is not void for vagueness. The plaintiff who was sentenced to twenty years can not complain on the ground that he could have been sentenced for life and could not have been sentenced for more than twenty years but less than life.

■ Supporting his contention that criminal statutes which are not reasonably definite are violative of the Due Process Clause, the plaintiff cites 14 Am Jur, Criminal Law, § 22; *State v. Anthony*, 179 Or 282, 169 P2d 587; *State v. Schriber*, 185 Or 615, 205 P2d 149; *City of Portland v. Goodwin*, 187 Or 409, 210 P2d 577; and *State v. Simons and Blanchard*, 193 Or 274, 238 P2d 246. None of the authorities cited bear upon the question here. They merely support the established rule that a criminal law must declare with reasonable certainty what acts it intends to prohibit. There is no uncertainty or claim of uncertainty as to what acts are prohibited by the statute under which the information was drawn. The alleged uncertainty asserted by the plaintiff relates to the penalty, not to the crime.

■ Plaintiff asserts that no conviction can be had for the violation of a statute for which no penalty is provided. 14 Am Jur, Criminal Law, § 19, pp 775-776; and 22 CJS, Criminal Law, § 25; *Mossew v. United States*, 266 F 18, and other similar cases. The statement is correct but has no bearing upon the question here presented.

In *Holmes v. United States,* 267 F 529, a criminal statute provided that any person guilty thereunder shall be punished ''as prescribed in the preceding section.'' The preceding section defined several different crimes and prescribed different punishments for the different offenses. It was held that it was impossible to determine what penalty was intended for the crime charged in the indictment which was not included among the crimes mentioned in the ''preceding section.'' The second assignment of error is without merit.

The third assignment of error also asserts the unconstitutionality of OCLA, § 23-427, supra, under which the plaintiff was convicted. This assignment presents a viewpoint quite different from that of assignment numbered 2. Here it is argued, not that the statute fails to provide a definite penalty, but rather, that it provides too severe a penalty. It is argued that the statute ''authorizes greater penalties for ineffectual attempts to commit crimes otherwise separately defined by the statutes * * * than is provided for the actual commission of such otherwise separately defined crimes.'' The claim is that the statute is therefore arbitrary and violative of the Equal Protection Clause of the Constitution.

We approach the question in the light of previous judicial experience with this law. Unnumbered persons have undoubtedly been convicted under its terms. The statute since its amendment in 1919 has been before this court in *State v. Edy,* 117 Or 430, 244 P 538 (assault with intent to rape—sentence 20 years); *State v. Ragan et al.,* 123 Or 521, 262 P 954 (assault with intent to rob); *State v. Milo et al.,* 126 Or 238, 269 P 225 (assault with intent to rob—sentence 15 years); *State v. Olsen,* 138 Or 666, 7 P2d 792 (assault

with intent to rape—sentence 15 years); *State v. Lanegan,* 192 Or 691, 236 P2d 438 (assault with intent to rob—sentence *10 years.*) In all of these cases conviction was affirmed under the statute now challenged as unconstitutional. The fact that the ruling contended for might cause a mass hegira from the penitentiary does not foreclose consideration of the issue, but it does argue that the contention should be viewed with profound skepticism. We must be guided by the established rule that every presumption is in favor of the validity of a penal statute and that we should declare no act of the Legislature void unless invalidity is shown beyond reasonable doubt. *State v. Laundy,* 103 Or 443, 204 P 958, 206 P 290; *State v. Bailey,* 115 Or 428, 236 P 1053; *State v. Kincaid,* 133 Or 95, 285 P 1105, 288 P 1015; *State v. Anthony,* 179 Or 282, 169 P 587; *State v. Pirkey,* 203 Or 697, 281 P2d 698. Furthermore, we have repeatedly held that in determining the validity of a criminal statute, this court must seek a construction which will avoid unconstitutionality. *State v. Anthony,* supra.

In essence, the contention of the plaintiff is that the statute punishing assault with intent (OCLA, § 23-427) authorizes a greater punishment than is provided for the actual commission of the crime "otherwise separately defined" by the statutes.

There is an essential difference between assault with intent to kill, on the one hand, and assault with intent to rape, rob or commit mayhem, on the other. In the case of assault with intent to kill, the substantive offense is defined in the statute OCLA, § 23-427 which also prescribes the penalty for an assault with intent to commit a crime, the substantive elements of which are defined in another statute, i. e., the one defining

and punishing rape, robbery or mayhem. The problem posed by the plaintiff could arise only if the penalty fixed by the assault statute (OCLA, § 23-427) was higher than the one fixed in the statute defining the substantive offense,—rape, robbery or mayhem. But that question is not before us. Our statutes concerning all degrees of homicide define the specific elements of each offense, varying from first degree murder to all types of manslaughter. But there is no statute which makes it a crime merely to kill another. The killing must be accompanied by other elements so as to constitute some degree of homicide as defined. Counsel for plaintiff points out the distinction between the crimes of assault with intent to kill and assault with intent to murder. It has been held that assault with intent to murder was a misdemeanor at common law. 40 CJS, Homicide, § 73, p 937. The same authority states that there was no such offense at common law as assault with intent to kill. That crime is purely the creature of statute. 40 CJS, Homicide, § 85, p 948.

■ It is held that assault with intent to murder, when defined as a crime, involves the necessary element of malice, but that element is not necessarily present in assault with intent to kill. *People v. Wilson,* 342 Ill 358, 174 NE 398; *State v. Crutcher,* 231 Iowa 418, 1 NW2d 195, 199; *Commonwealth v. Demboski,* 283 Mass 315, 186 NE 589.

> "There is a well recognized distinction between an assault with intent to murder and an assault with intent to kill. Malice is a necessary element to constitute an assault with intent to murder but it is absent in an assault with intent to kill or commit manslaughter, or, as it is said, the assault with intent to kill may be committed without malice. If malice is lacking and yet the assault is unlawful, the crime committed is of a lower degree than

assault with intent to murder.'' 40 CJS, Homicide, § 73, p 938.

Again, there is a distinction between an attempt to commit manslaughter and an assault with intent to kill. 40 CJS, Homicide, § 85, p 948; *Devoe v. Tucker,* 113 Fla 805, 809, 152 So 624. The crime of attempt as defined by ORS 161.090 applies to acts toward the commission of some other crime elsewhere defined, whereas the crime of assault with intent to kill is defined and prohibited only in the statute with which we are concerned, OCLA, § 23-427.

From the foregoing, it will appear that plaintiff is in error in referring to the assault statute as applying to ''ineffectual *attempts*''. (Italics ours.) One might attempt to commit murder or manslaughter without making any assault. Plaintiff is also in error in failing to distinguish between assault with intent to kill, which is defined and made punishable only in OCLA, § 23-427, and assaults with intent to rob, rape or commit mayhem, in which latter cases alone could there be any conflict between two different statutory provisions for punishment. Needless to say, the Equal Protection Clause does not strike down criminal statutes merely because they authorize a wide discretion on the part of the court in imposing sentence within the limits set by the Legislature. In this case such discretion is vested and was exercised. The statute was not unconstitutional in fixing the limits for assault with intent to kill. This disposes of assignments numbered 3 and 4.

The fifth assignment of error raises the question as to the sufficiency of the allegations of paragraph 10 of the traverse, when tested by demurrer. Plaintiff was represented by counsel having long familiarity and experience in bringing habeas corpus pro-

ceedings for persons imprisoned in the penitentiary. We may assume that the allegations go at least as far as the facts would allow. The allegations, briefly summarized, are as follows: (1) He was unable to take an appeal without the help of counsel. (2) He wrote numerous letters to legal counsel and personally requested the officers of the penitentiary to permit him to contact legal counsel. (3) Every effort to gain access to the courts was denied until after the time for filing an appeal. There is no allegation as to what court or officer denied any request. Plaintiff alleges that he has no knowledge as to what disposition was made of his letters, but that he did everything within his power to secure counsel. The demurrer was properly sustained. The parties stipulated as follows concerning paragraph 10 of the traverse:

"The Court: Have you agreed on a stipulation?

"Mr. Hammel: We have orally, yes, and I will state it and Mr. Estep can correct me if there are any qualifications.

"That in paragraph X plaintiff does not allege nor intend to prove that any state official or employee refused to accept and relate his oral request, rather it is based on the contention he did everything he could possibly within his ability to effect an appeal but was unsuccessful. Is that it?

"Mr. Estep: I might say we are willing to stipulate to this effect: That simply that from the time when the plaintiff was placed in the penitentiary until after the time limit for the filing of the notice of appeal, he did everything possible, literally,—everything possible to gain access to the courts. He did not gain access to the court and it was not possible. We go no further than that. As to what disposition was made of the letters and other things, we do not claim any knowledge. I believe that is consistent."

What action prevented an appeal and by whom taken, if at all, does not appear. There is no allegation that any state action was taken by any court or official which prevented his appeal. The Fourteenth Amendment is directed against state action only and there is no sufficient allegation of any such action. *Ex parte, Commonwealth of Virginia (Virginia v. Rives)* 100 US 313, 25 L ed 667; *Nixon v. Condon,* 286 US 73, 76 L ed 984; *Shelley v. Kraemer,* 334 US 1, 92 L ed 1161. For all we know, his letters may have been received by lawyers who refused employment because plaintiff had no grounds for appeal.

■ There is another reason why this court should not release the plaintiff on the grounds alleged in paragraph 10. There was no trial and no testimony taken on the information charging the defendant (plaintiff here) with assault with intent to kill. The only matters which could have been brought to this court on appeal were the information, the waiver of grand jury, the record of the plea of guilty, the journal entries reciting the waiver of right to counsel and reciting the proceedings had in open court, and the sentence. None of the matters complained of in his petition for a writ of habeas corpus would have been before this court on his appeal from the conviction, if he had taken one, with the sole exception of the contentions concerning the sufficiency of the information and the validity of the statute and of the sentence pronounced thereunder. All of those issues have been considered in this appeal and decided against the plaintiff. He has now had the benefit of an inquiry vastly wider in scope than he could have enjoyed on an appeal from his conviction. *Huffman v. Alexander,* 197 Or 283, 251 P2d 87, 253 P2d 289.

Assignments 6, 7, and 8 relate to issues of fact which were tried out before the circuit court on the hearing in the habeas corpus case. We have already considered them and have held that the findings of the trial court are binding upon us.

The judgment of the circuit court is affirmed and the defendant is remanded to the custody of the warden.