Argued and submitted June 28, petition allowed June 24, defendant sheriff is ordered
to return the plaintiff prisoner to the Linn County correctional facility July 9, 1985

In the Matter of the Application
of Christopher Lee Cleveland for
a Writ of Habeas Corpus,

CLEVELAND,
*Plaintiff,*

*v.*

GOIN,
*and*

EASTMAN,
*Defendants.*

(SC S31893)

703 P2d 204

Kathryn A. Wood, Corvallis, argued the cause for plaintiff.

Jackson A. Frost, District Attorney, Albany, argued the cause for defendant Goin.

Kenneth S. Eiler, Clatsop County Counsel, waived appearance for defendant Eastman.

PER CURIAM

Campbell, J., filed a dissenting opinion joined by Peterson, C. J.

## PER CURIAM

The plaintiff in this habeas corpus proceeding alleged that he is being held and imprisoned in the Clatsop County Jail while awaiting trial on Aggravated Murder and Robbery I charges pending in Linn County. He claims his imprisonment is illegal "in that the conditions of his imprisonment are violative of his statutory and constitutional rights." We do not reach his constitutional claim, because we resolve these proceedings on other grounds. In response to the writ issued by this court, the Sheriff of Linn County filed a return in which he asserts that he transferred the plaintiff to the Clatsop County jail because of overcrowding conditions and security problems at the Linn County jail. The sheriff specifically relies on an order by the United States District Court for the District of Oregon which restricts the population of the Linn County correctional facility to 24 persons and requires him to segregate "violent inmates from non-violent" inmates. He is also ordered to segregate the prisoners among three cell blocks within the facility. The defendant sheriff concludes his return by claiming that the transfer to Clatsop County was necessary because "it was determined not to be feasible, consistent with my lawful obligations, and my duty to provide safety and security and available space in the Linn County Facility" to retain the plaintiff prisoner in Linn County.

ORS 135.215 reads:

"The commitment shall be directed to the sheriff of the county in which the magistrate is sitting. Such sheriff shall receive and detain the defendant, as thereby commanded, in the jail of his county or, if there is no sufficient jail in the county, by such means as may be necessary and proper therefor or by confining him in the jail of an adjoining county."

Although this statute is addressed to commitment after a preliminary hearing and does not specifically apply to the pretrial detention of this prisoner, it reflects legislative policy that prisoners be confined in jails in or adjoining the county where they are awaiting trial when space is available.

We judicially note that Clatsop County is not adjoining Linn County, and there is no dispute that the plaintiff prisoner was committed to the custody of the sheriff of Linn County by the circuit judge of Linn County. We therefore

consider the narrow issue "if there was no sufficient jail in the county," and whether the continued confinement of the prisoner in Clatsop County is necessary.

During oral argument counsel for both sides agreed that this court should accept as part of the record in this case daily logs of the jail population prepared by the Linn County Sheriff's staff. These logs demonstrate that from June 3 to the date of argument, June 28, 1985, if the prisoner had been imprisoned in Linn County, at no time would the daily population of the Linn County jail have exceeded the 24-person limit set by the federal court. On only three days in June would the population have reached 24. On the day of argument the jail population was only 16. The defendant sheriff did not segregate for this court the "violent" and "non-violent" prisoners, except by reference to the charges pending against certain prisoners. Those serving county time were misdemeanants or probation violators.

We find that the continuation of custody in the Clatsop County jail was not required because of insufficiency of Linn County jail space. Thus, the defendant sheriff is ordered to return the plaintiff prisoner to the Linn County correctional facility. ORS 34.700.

**CAMPBELL, J.,** dissenting.

I disagree with the majority's conclusion for two reasons. First, they apply a statute never intended to cover circumstances such as the present. Second, the majority opinion incorrectly places the burden of proof on the defendant sheriff.

## APPLICATION OF ORS 135.215

The majority stretches a statute intended to apply only to defendants bound over after a preliminary hearing to also encompass defendants committed upon an indictment returned by a grand jury. *See* ORS 135.070 to 135.225. Notwithstanding the fact that such equal treatment seems to make good sense, ORS 135.215 is simply not so broad in scope. It was not intended to reflect a broad legislative policy regarding the pretrial incarceration of all prisoners but only those committed following a preliminary hearing.

## BURDEN OF PROOF

As a general rule, in a habeas corpus proceeding, the petitioner has the burden of proof and must establish his case by a preponderance of the evidence. *Smallman v. Gladden,* 206 Or 262, 269, 291 P2d 749 (1956). *Anderson v. Alexander,* 191 Or 409, 229 P2d 633, 230 P2d 770 (1951); *See In re Application of Loundagin,* 129 Or 652, 278 P 950 (1929).

In the case at bar, petitioner presented his claim with specific allegations and the defendant sheriff of Linn County filed a Return of the Writ of Habeas Corpus.

The facts stated in the Return are, *prima facie,* presumed to be true and the burden of proof is on the petitioner or relator to show the contrary by allegation and proof. *Thompson v. Sanders,* 70 SW2d 1051, 334 Mo 1100 (1934). Where a *prima facie* case is made out by the return, the burden is on the petitioner to show that the imprisonment is illegal." *Teague v. Looney,* 268 F2d 506, 508 (10th Cir 1959).

In his Return, the sheriff states that to comply with a court order from the U. S. District Court for Oregon, he is required to limit the number of inmates to 24, to separate violent inmates from non-violent inmates and to further segregate prisoners among the three cell blocks within the facility. He further states that on the day petitioner was transferred to the Clatsop County Jail, the Linn County facility had the maximum 24 prisoners, six of whom were charged with intentional homicide. The sheriff adds that in his segregation of prisoners he is further constrained by construction activities at the facility that began on June 19, 1985, and are expected to continue for 90 days. The sheriff states that the safety of inmates is a very real concern because one inmate was murdered by fellow inmates in November, 1984. The sheriff acknowledges that petitioner's imprisonment in Clatsop County is inconvenient to petitioner's attorney and potential visitors, but contends that the transfer was necessary to insure the personal safety of all inmates, including the petitioner, and the security of the facility as a whole. On the several occasions where there seemed to be opportunities to return petitioner to Linn County, the sheriff determined that, consistent with his legal obligations and his duty to provide safety and security, it was not feasible to return the prisoner.

In his Return, the sheriff clearly makes out a *prima facie* case for petitioner's displacement from Linn County.

The burden now rests with the petitioner "to show the contrary by allegation and proof." Simply submitting the daily logs of the Linn County Jail population which indicate that between June 3-18 there were 24 or less prisoners at the facility, does not address the critical issues of segregating violent inmates from non-violent, segregating the prisoners among the three cell blocks, or the impact of the construction activities on the segregation process. The burden which petitioner failed to meet was to prove "all facts necessary" to show that there was the proper "space" for him in this particular facility at this particular time.

## ANSWER TO CONSTITUTIONAL ARGUMENTS

Petitioner contends that as a result of his continued imprisonment at the Clatsop County Jail he is being denied the effective assistance of counsel in violation of the state and federal constitutions. In *Krummacher v. Gierloff,* 290 Or 867, 872, 627 P2d 458 (1981), this court stated that the constitutional provisions for the right to counsel "call for an adequate performance by counsel of those functions of professional assistance which an accused person relies upon counsel to perform on his behalf." This court further stated that although the standard of performance necessarily involved "a degree of subjectivity and ad hoc judgment" adequate assistance of counsel "requires that the lawyer do those things reasonably necessary to diligently and conscientiously advance the defense." *Id* at 874. Nowhere do we state that in subjecting a lawyer's performance to constitutional scrutiny we will consider the lawyer's own personal inconvenience as the basis for the accused's being denied his constitutional right to counsel. It is indeed unfortunate that the accused's counsel must make a seven hour round-trip, eat meals away from home, "waste" her time while driving and be "exhausted" in the process. Granted, it would be easier for counsel if the accused were only a few blocks away, but (like lawyer inconvenience) ease of representation does not figure into the constitutional scrutiny of a lawyer's performance.

In the case at bar, there is no question that the lawyer is inconvenienced by the geographic distance between herself

and her client. Access to her client involves additional planning and extra time. However, as long as she does "those things reasonably necessary to diligently and conscientiously advance the defense," the accused's right to effective counsel is not jeopardized. The accused has a right to expect his lawyer to exercise professional skill and judgment. There is no concomitant constitutional guarantee regarding the ease or convenience with which her professional legal services shall be provided. It is error to turn lawyer inconvenience into deprivation of the accused's constitutional right to effective counsel.

In challenging his confinement at the Clatsop County Jail, petitioner also invokes Article I, section 13, of the Oregon Constitution which provides that "no person arrested or confined in jail shall be treated with unnecessary rigor." Petitioner claims he is being subjected to undue rigor by being moved from Linn County to a location where he is "physically and emotionally inaccessible" to his attorney, his family and his friends. In *Sterling v. Cupp,* 290 Or 611, 625 P2d 123 (1981), this court stated that while historically the most obvious examples of rigorous practices were shackles, the ball and chain and brutal treatment or conditions, today "unnecessary rigor" is not to be equated only with beatings or other forms of physical brutality. It extends to "needlessly harsh, degrading or dehumanizing treatment of prisoners. *Id* at 622. In analyzing an "unnecessary rigor" claim this court stated that:

> "Since it is 'unnecessary' rigor that is proscribed, the first question under this clause is whether a particular prison or police practice would be recognized as an abuse to the extent that it cannot be justified by necessity." *Id* at 620.

I am unconvinced that this constitutes such an abuse within the meaning of Article I, section 13.

In his Return, the defendant sheriff amply justifies the practice of placing prisoners in other facilities with available space. By order of the U. S. District Court for Oregon, the sheriff must not only limit the prison population but he must also segregate violent and non-violent prisoners as well as regulate prisoners among three cell blocks within the facility. If a particular prisoner cannot be properly held at Linn County, the sheriff has no alternative but to locate space for that prisoner in another correctional facility. At the time

petitioner needed to be placed, the sheriff was unable to locate space in a correctional facility in an adjoining county. Given these facts, there is no question that the sheriff's actions are justified by necessity. Using the "justified by necessity" test laid down by this court in *Sterling,* petitioner's "unnecessary rigor" argument must fail.

Chief Justice Peterson joins in this dissent.