Id. at 306, 109 S.Ct. 1060 (quoting Mackey , 401 U.S. at 682-83, 91 S.Ct. 1160 (Harlan, J., concurring in part and dissenting in part)). After noting the different considerations at issue in cases arising on direct appeal and in cases arising on collateral review, Teague concluded that, as a general rule, new federal constitutional rules will not apply retroactively to cases that had become **667 final before the new constitutional rule was announced. Id. at 307-08, 109 S.Ct. 1060. Teague also recognized two exceptions to that "general rule of nonretroactivity": (1) "if [the rule] places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe" and (2) if the rule is a "watershed rul[e] of criminal procedure" that "alter[s] our understanding of the bedrock procedural elements" essential to a fair proceeding. 489 U.S. at 307, 311, 109 S.Ct. 1060 (internal quotation marks omitted; emphasis omitted). See Penry v. Lynaugh , 492 U.S. 302, 330, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) (adopting the plurality's reasoning in Teague ).
Teague arose in the context of a federal habeas corpus proceeding, and it was unclear initially whether the general rule of nonretroactivity and the two exceptions that Teague announced reflected an interpretation of the federal habeas corpus statutes or the scope of the underlying federal constitutional right. The Court gave partial answers to that question first in Danforth and later in Montgomery v. Louisiana , --- U.S. ----, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016).
The Court held in Danforth that Teague 's general rule of nonretroactivity reflects the relief available under the federal habeas corpus statutes. 552 U.S. at 282, 128 S.Ct. 1029. In reaching that conclusion, the Court started from the proposition that "the source of a 'new rule' is the Constitution itself, not any judicial power to create new rules of law. Accordingly, the underlying right necessarily pre-exists our articulation of the new rule." Id. at 271, 128 S.Ct. 1029. The Court explained:
"What we are actually determining when we assess the 'retroactivity' of a new rule is not the temporal scope of a newly announced right, but whether a violation of the right that occurred prior to the announcement of the new rule will entitle a criminal defendant to the relief sought."
Id.
Building on that proposition, the Court explained in Danforth that, while the federal habeas statute gives federal courts the authority to grant writs of habeas corpus, it "leaves unresolved many important questions about the scope of available relief." Id. at 278, 128 S.Ct. 1029. The Court observed that **668 it "has interpreted that congressional silence-along with the statute's command to dispose of habeas petitions 'as law and justice require'-as an authorization to adjust the scope of the writ in accordance with equitable and prudential considerations." Id. (internal citations omitted). The Court concluded in Danforth that Teague 's general rule of nonretroactivity was "plainly grounded" in that authority, as were the Court's decisions requiring exhaustion of state court remedies and a showing of cause and prejudice before *390 raising an issue in federal habeas that had not been preserved in the state courts. Id.
The Court later held in Montgomery that " Teague 's conclusion establishing the retroactivity of new substantive rules [that come within the first Teague exception] is best understood as resting upon constitutional premises." 136 S.Ct. at 729. The Court reasoned that the concerns that led to Teague 's first exception required, as a matter of federal constitutional law, that new rules that come within that exception be applied retroactively. Id. It followed, the Court held in Montgomery , "that when a new substantive rule of constitutional law [that comes within the first Teague exception] controls the outcome of a case, the Constitution requires state collateral review courts to give retroactive effect to that rule."Id.
Danforth and Montgomery thus identify two classes of new federal constitutional rules. For new constitutional rules that come within the first Teague exception, retroactivity is an inherent part of the right; state courts must give retroactive effect to the right. Montgomery , 136 S.Ct. at 729. Conversely, new constitutional rules that come within Teague 's "general rule of nonretroactivity" permit but do not require retroactive application of the newly recognized right. Danforth , 552 U.S. at 278-79, 128 S.Ct. 1029. The retroactive application of those rules (rules that come within the general rule of nonretroactivity) on state and federal collateral review can be offset by "equitable and prudential considerations," such as finality. Id.
B. State Collateral Challenges
The history of state post-conviction proceedings mirrors in many respects their federal counterpart. The **669 Oregon legislature enacted the post-conviction statute in 1959. Before then, a person convicted of a crime could bring a state writ of habeas corpus to challenge the validity of his or her criminal conviction, although the grounds for doing so were limited initially to jurisdictional challenges. Huffman v. Alexander , 197 Or. 283, 297, 251 P.2d 87 (1952), on recons. , 197 Or. 283, 253 P.2d 289 (1953) (explaining that state habeas initially was limited to jurisdictional challenges). Other common law writs, such as a motion in the nature of coram nobis and a motion to correct the record, were also available in state court before 1959 to challenge the validity of a conviction. See Jack G. Collins and Carl R. Neil, The Oregon Postconviction-Hearing Act , 39 Or. L. Rev. 337, 338 (1960) (listing collateral relief available before the enactment of the 1959 post-conviction act). As Collins and Neil note, the multiplicity of state collateral remedies sometimes proved a trap for the unwary, and the Oregon legislature enacted the 1959 post-conviction act to simplify the procedure for bringing a state collateral challenge to a criminal conviction. Id. at 337-40; see also Bartz , 314 Or. at 362, 839 P.2d 217.
The 1959 state post-conviction act made a petition under the act the exclusive remedy for challenging the lawfulness of a state criminal conviction,[5] and it abolished all common law post-conviction remedies except for the writ of habeas corpus. ORS 138.540(1) ; cf. Penrod/Brown v. Cupp , 283 Or. 21, 24-25, 581 P.2d 934 (1978) (describing the scope of relief available pursuant to a writ of habeas after the enactment of the 1959 post-conviction act).[6] The 1959 act identified four categories of claims for which "[p]ost-conviction relief pursuant to [this act] shall be granted": (a) "[a] substantial denial" of the petitioner's federal and state constitutional rights "which denial rendered the conviction void"; (b) lack of jurisdiction; (c) an unconstitutional or statutorily unauthorized sentence; and (d) a conviction under a statute **670 that is substantively unconstitutional. ORS 138.530(1). The act also supplied a rule for construing its terms. It provided:
"Whenever a person petitions for relief under ORS 138.510 to 138.680, *391 ORS 138.510 to 138.680 shall not be construed to deny relief where such relief would have been available prior to May 26, 1959, under the writ of habeas corpus, nor shall it be construed to affect any powers of executive clemency or pardon provided by law."
ORS 138.530(2). Finally, the act gave trial courts discretion to grant "release, new trial, modification of sentence, and such other relief as may be proper and just." ORS 138.520.
In this case, petitioner relies on ORS 138.530(2) and ORS 138.530(1)(a) to argue that the 1959 legislature intended that every new constitutional rule announced by this court and the United States Supreme Court will apply retroactively in all post-conviction proceedings brought pursuant to the 1959 act. Petitioner focuses initially on ORS 138.530(2), and we begin with that subsection.
1. ORS 138.530(2)
ORS 138.530(2) provides that post-conviction petitions filed pursuant to the 1959 act "shall not be construed to deny relief where such relief would have been available prior to May 26, 1959, under the writ of habeas corpus." In arguing that ORS 138.530(2) requires the retroactive application of all new constitutional rules, petitioner starts from the premise that, before May 26, 1959, federal courts applied new federal constitutional rules retroactively in federal habeas corpus proceedings. Because ORS 138.530(2) provides that the post-conviction act shall not be construed to deny relief "where such relief would have been available prior to May 26, 1959, under the writ of habeas corpus," he concludes that the legislature intended that all new constitutional rules will be applied retroactively in Oregon post-conviction proceedings.
As petitioner recognizes, the rule of construction that ORS 138.530(2) provides turns on the scope of the "relief [that] would have been available prior to May 26, 1959, under the writ of habeas corpus." The relief under the 1959 act should be as broad as the relief that previously **671 was available "under the writ of habeas corpus." However, contrary to the assumption that underlies petitioner's argument, the statutory phrase "writ of habeas corpus" in ORS 138.530(2) refers to the state writ of habeas corpus, not the federal writ. Moreover, before 1959, the Oregon courts had not applied new constitutional rules retroactively. Rather, the issue had not arisen in state habeas. For that reason, no clear pattern of state habeas decisions existed that would permit us to infer that the 1959 legislature intended to codify a requirement that all new constitutional rules be applied retroactively. With that preface, we turn to a more complete discussion of the textual and contextual issues that petitioner's argument raises.
Textually, the phrase "writ of habeas corpus" in ORS 138.530(2) could refer to either the federal writ or the state writ. The legislature did not specify which writ it had in mind. Other sections of the 1959 act, however, refer to either the state statutory writ or the state constitutional writ. ORS 138.540(1) abolished a number of state "common law post-conviction remedies" "[w]ith the exception of habeas corpus." Given the juxtaposition of "habeas corpus" with other state "common law post-conviction remedies," we assume that the phrase, as used in that subsection of the statute, refers to the state writ. Similarly, ORS 138.530(3) provides that the act shall not be construed to limit this court's constitutionally based original jurisdiction in habeas corpus, again using the phrase to refer to a state writ. Finally, section 22 of the 1959 act amended the state habeas statutes to except post-conviction petitions under the 1959 act from the scope of those statutes. See Or. Laws 1959, ch. 636, § 22.
Ordinarily, we assume that the legislature used the phrase "writ of habeas corpus" in ORS 138.530(2) the same way that it used that phrase (or a variation of that phrase) throughout the act-namely, to refer to a state writ of habeas corpus. See Figueroa v. BNSF Railway Co. , 361 Or. 142, 159, 390 P.3d 1019 (2017) (identifying that principle of statutory construction). Moreover, because a statutory post-conviction petition is the exclusive means for challenging the validity of a conviction under the 1959 act, this court has recognized that ORS 138.530(2) reflects the legislature's **672 intent to ensure that the relief available under the new post-conviction *392 act was as broad as that available under the state writ of habeas corpus, which has state constitutional underpinnings. Benson v. Gladden , 242 Or. 132, 136-37, 407 P.2d 634 (1965). We accordingly look to the practice under the state writ of habeas corpus to determine whether, as petitioner argues, ORS 138.530(2) requires that all new constitutional rules be applied retroactively in state post-conviction proceedings.
On that issue, no Oregon Supreme Court decision had held before 1959 that a new constitutional ruling would apply retroactively. Indeed, no Oregon Supreme Court decision had expressly identified that issue before 1959, nor does there appear to have been a practice of sub silentio applying new constitutional rulings retroactively in state habeas. In large part, the absence of any discussion of retroactivity before 1959 derived from the limited grounds on which habeas had been available before the enactment of the post-conviction act. As noted above, state habeas relief traditionally had been available only if the court imposing the conviction had lacked jurisdiction over the person or the subject. Huffman , 197 Or. at 297, 251 P.2d 87. Because those constitutional principles were well-established, they presumably did not raise questions regarding the retroactive application of "new" constitutional rules. At most, the only question that they raised was the application of established principles to analogous circumstances.
To be sure, this court recognized in Huffman in 1952 that state habeas also would lie for "other matter[s] rendering the proceeding void." 197 Or. at 298, 251 P.2d 87 (internal quotation marks omitted; emphasis omitted). However, the court had no occasion in Huffman to address whether the other matters that the petitioner raised in that case, if proved on remand, would announce "new rules" and whether, if they did so, they would apply retroactively.[7] The same is true for the other cases arising before 1959. For all that appears from the cases, this court applied settled rules to the facts of **673 the cases in habeas. See, e.g. , Barber v. Gladden , 210 Or. 46, 57-58, 298 P.2d 986 (1956).[8] Those cases do not yield an instance in which this court clearly applied a new constitutional rule retroactively in state habeas.
Although petitioner does not identify any case in which the state writ of habeas was applied retroactively, even sub silentio , we note that two cases- Cannon v. Gladden , 203 Or. 629, 281 P.2d 233 (1955), and Smallman v. Gladden , 206 Or. 262, 291 P.2d 749 (1956), overruled in part on other grounds , State v. Collis , 243 Or. 222, 413 P.2d 53 (1966) -arguably could be viewed that way. We discuss each case briefly and then explain why we view them differently.
In Cannon , the legislature provided (and Cannon received) a greater sentence for attempted rape than he could have received for the completed crime. 203 Or. at 630-31, 281 P.2d 233. In considering whether Cannon's sentence was constitutionally disproportionate, this court began by noting that the case was "unusual" and that it could not find "any authorities to guide [it] in [its] task." Id. at 631, 281 P.2d 233. However, it decided the question by applying the constitutional rule established 34 years earlier in Sustar v. County Court for Marion Co. , 101 Or. 657, 201 P. 445 (1921) -whether Cannon's sentence was so disproportionate to the offense that it shocked the moral sense of all reasonable people. 203 Or. at 632, 281 P.2d 233. After phrasing the question that way, the court explained that "[t]he question answers itself." Id.
On the one hand, it is possible to read Cannon as announcing a new rule that it applied retroactively (albeit without saying *393 so) to a conviction that had become final. After all, the court noted that it could find no authorities to guide it in its task. On the other hand, it is possible to read Cannon as applying the well-settled rule set out in Sustar to a new factual situation in which the correct application of the rule to the petitioner's sentence could only be described as self-evident. In considering whether Cannon announced **674 a "new" constitutional rule that it applied retroactively, it is helpful to remember that the current federal definition of a "new" constitutional rule set out in Teague in 1989 did not exist either in 1955 when the court decided Cannon or in 1959 when the legislature enacted the post-conviction act. See Desist , 394 U.S. at 263, 89 S.Ct. 1030 (Harlan, J., dissenting) (explaining in 1969 that, before asking whether a rule applies retroactively, "it is necessary to determine whether a particular decision has really announced a 'new' rule at all or whether it has simply applied a well-established constitutional principle to govern a case which is closely analogous to those which have been previously considered in the prior case law"). In our view, Cannon 's holding is better understood as applying the constitutional principles established in Sustar to a new factual situation. As such, its application of Sustar to the sentence before it raised no question of retroactive application of a new rule.
The other decision that could be said to raise an issue of retroactivity is Smallman . Tucked away in the middle of that decision is a discussion of the petitioner's third assignment of error; in that assignment of error, he argued that the statute under which he had been convicted violated the Equal Protection Clause. See 206 Or. at 278-81, 291 P.2d 749. This court noted that "[t]he fact that the ruling contended for might cause a mass hegira from the penitentiary does not foreclose consideration of the issue, but it does argue that the contention should be viewed with profound skepticism." Id. at 279, 291 P.2d 749. This court went on to reject the petitioner's argument on the merits. Id. at 281, 291 P.2d 749.
It is possible to read the court's statement that a ruling in the petitioner's favor "might cause a mass hegira from the penitentiary" as a recognition that a favorable ruling "might" apply retroactively. The court, however, never resolved (and had no need to resolve) whether such a ruling would apply retroactively since it ruled against the petitioner on the merits. It is true that, long after Smallman was decided, the plurality in Teague explained that the question whether a new federal ruling applies retroactively should be resolved as a preliminary matter. See Teague , 489 U.S. at 300-01, 109 S.Ct. 1060. But we cannot conclude from a federal practice announced more than 30 years after Smallman was decided **675 that this court sub silentio concluded that any ruling in the petitioner's favor would apply retroactively.
As we read the state habeas decisions before 1959, they do not expressly address the retroactive application of new constitutional rules, nor do they reveal a clear pattern of retroactive application in state habeas decisions. It follows that we cannot read ORS 138.530(2), as petitioner urges us to do, as codifying a well-accepted practice of requiring that all new constitutional rules will be applied retroactively. Moreover, even if we were to conclude that, before 1959, the Oregon courts had applied some new constitutional rules retroactively in state habeas corpus, it does not follow that the 1959 legislature understood or intended that all new rules would be applied retroactively. After all, some new constitutional rules call for retroactive application in ways that others do not. See generally Mishkin, 79 Harv. L. Rev. at 77-86 (noting that point).
Contrary to petitioner's argument, ORS 138.530(2) does not reflect a legislative choice to require that all new constitutional rules be applied retroactively in state post-conviction proceedings. We also note that, even if we looked to the practice in federal habeas cases, as petitioner argues we should, to interpret the meaning of ORS 138.530(2), the retroactive application of new federal rulings in federal habeas cases before 1963 was "rare." Desist , 394 U.S. at 261, 89 S.Ct. 1030 (Harlan, J., dissenting). More importantly, as noted above, the Court had applied only one new federal constitutional rule retroactively before the Oregon legislature enacted our post-conviction statute in 1959. It follows that *394 we cannot find in either the text of ORS 138.530(2) or the context of that statute a mandate that we apply every new constitutional rule retroactively. Because ORS 138.530(2) does not support the conclusion that petitioner urges us to draw from it, we turn to ORS 138.530(1)(a), the other subsection on which petitioner relies.
2. ORS 138.530(1)(a)
ORS 138.530(1) provides that "[p]ost-conviction relief pursuant to [the 1959 act] shall be granted by the court when one or more of the following grounds is established by the petitioner": (a) "[a] substantial denial in the proceedings **676 resulting in petitioner's conviction" of the petitioner's state or federal constitutional rights which "rendered the conviction void"; (b) a lack of jurisdiction over the subject matter or the person; (c) an unconstitutional or an unauthorized sentence; and (d) a conviction based on a statute that is substantively unconstitutional.
Focusing on ORS 138.530(1)(a), petitioner interprets that subsection as requiring that all new constitutional rules be applied retroactively. Petitioner does not explain why he interprets ORS 138.530(1)(a) that way, and we note two textual problems with his interpretation. Petitioner appears to read the word "when" in the phrase "when one or more of the following grounds is established by the petitioner" as "whenever." To be sure, "when" is broad enough to permit his reading. But his conclusion that ORS 138.530(1)(a) mandates retroactive application of all new constitutional rules would follow more naturally from the text if the legislature had used a different word.
Beyond that, petitioner never explains why the phrase "substantial denial" of his constitutional rights that "rendered the conviction void" is not a problem for his reading of the subsection. Textually, ORS 138.530(1)(a) does not require that post-conviction relief "shall be granted" when any denial of a constitutional right is established. Rather, it provides that relief shall be granted only when a "substantial denial" of a constitutional right rendered the conviction "void." At a minimum, the text of the statute is difficult to square with petitioner's argument that ORS 138.530(1)(a) requires that every new constitutional rule be applied retroactively. In our view, the interpretation of ORS 138.530 (1)(a) that petitioner urges us to adopt does not fit comfort-ably with the text of that subsection.
Another interpretation is textually permissible. ORS 138.530(1) might not be intended to address retroactivity at all. Rather, it could merely identify four grounds for relief for which post-conviction relief shall be granted. Moreover, the phrase "when one or more of the following grounds is established by the petitioner" could have a more modest meaning than the one petitioner attributes to it. It could simply make clear that the burden is on the petitioner to establish the **677 existence of one of the four grounds for which relief shall be granted. Providing that post-conviction relief shall be granted if and when one of those four grounds for relief is established does not necessarily say anything about whether some or all new constitutional rules that come within those four grounds will apply retroactively.
We also consider a statute's context in determining what the text means. Context includes "the preexisting common law and the statutory framework within which the law was enacted." Klamath Irrigation District v. United States , 348 Or. 15, 23, 227 P.3d 1145 (2010) (internal quotation marks omitted). As explained above, retroactive application of new constitutional rules in state habeas proceedings was not an issue when the legislature enacted the post-conviction act in 1959. Moreover, it was not a substantial issue in federal habeas either. Because of procedural limitations on federal habeas corpus, the retroactive application of new federal rulings in federal habeas cases before 1963 was "rare." Desist , 394 U.S. at 261, 89 S.Ct. 1030 (Harlan, J., dissenting).
To be sure, one pair of federal decisions had raised the issue before 1959. In 1956, a plurality of the United States Supreme Court ruled that, if states provided for appeals generally, they could not deny indigent defendants that right by requiring them to pay for a transcript as a condition of taking an appeal. Griffin v. Illinois , 351 U.S. 12, 18-20, 76 S.Ct. 585, 100 L.Ed. 891 (1956). Justice *395 Frankfurter concurred in the judgment. He agreed that, if a state "has a general policy of allowing criminal appeals, it cannot make lack of means an effective bar to the exercise of this opportunity." Id. at 24, 76 S.Ct. 585 (Frankfurter, J., concurring in the judgment). In agreeing with the plurality, however, he noted that the rule announced in Griffin did not necessarily apply retroactively. He observed that, in future cases, the Court should recognize "candidly the considerations that give prospective content to a new pronouncement of law." Id. 26, 76 S.Ct. 585. He then concluded that "[t]he rule of law announced this day should be delimited as indicated." Id .
Two years later, in 1958, the Court applied Griffin retroactively in a per curiam opinion, which did not mention the issue of retroactivity. See Eskridge , 357 U.S. at 216, 78 S.Ct. 1061. The **678 opinion focused instead on the state's argument that, even though the petitioner in Eskridge had lacked the funds to pay for a transcript, he could have based his direct appeal on "notes compiled by someone other than the official court reporter." See id. at 215-16, 78 S.Ct. 1061. Petitioner has not identified any other United States Supreme Court decision before 1959 applying a new federal constitutional rule retroactively to a case arising on collateral review, and we hesitate to infer from a single decision that the 1959 Oregon Legislature would have intended that all new federal and state constitutional rules would apply retroactively in Oregon post-conviction proceedings.
One final source bears on petitioner's statutory interpretation argument. In State v. Fair , 263 Or. 383, 502 P.2d 1150 (1972), this court recognized that it was not bound to apply all new federal constitutional rules retroactively in post-conviction proceedings. As the court explained in Fair , "we are free to choose the degree of retroactivity or prospectivity which we believe appropriate to the particular rule under consideration, so long as we give federal constitutional rights at least as broad a scope as the United States Supreme Court requires." Id. at 387-88, 502 P.2d 1150 ; see Bouge v. Reed , 254 Or. 418, 459 P.2d 869 (1969) ; Haynes v. Cupp , 253 Or. 566, 456 P.2d 490 (1969)overruled on other grounds , State v. Evans , 258 Or. 437, 442, 483 P.2d 1300 (1971).[9] We cannot reconcile the rule that petitioner urges us to draw from Oregon's post-conviction statute (that every new constitutional rule will apply retroactively in post-conviction proceedings) with the rule that Fair announced (that the court may but need not apply some new constitutional rules retroactively).
To be sure, the court in Fair did not state its retroactivity rule after analyzing the text and context of the 1959 statute. But if, as discussed above, the text and context of the 1959 statute do not require the absolute rule that petitioner urges us to find in those sources, then this court's retroactivity decisions, summarized in Fair , provide another **679 contextual clue that ORS 138.530(1)(a) does not require that every new constitutional rule apply retroactively in state post-conviction proceedings.
Considering the text and context of Oregon's post-conviction statute, we hold that ORS 138.530 does not require that all new constitutional rules be applied retroactively. That holding is sufficient to answer the sole retroactivity argument that petitioner has made in his briefs to this court. It follows that we need not decide in this case whether we should clarify or further refine the factors that this court considered in Fair in deciding whether a new constitutional rule will apply retroactively.
The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

The act recognized limited exceptions to the general rule that post-conviction proceedings are the exclusive means for challenging the lawfulness of a conviction. ORS 138.540(1).

In discussing the 1959 act, we cite the statutes codifying the act. The relevant provisions of ORS 138.520, ORS 138.530, and ORS 138.540(1) have remained unchanged since their enactment. Compare Or. Laws 1959, ch. 636, §§ 2-4, with ORS 138.520, ORS 138.530, and 138.540(1).

After the court issued its decision in Huffman , the state notified this court that the case was moot and that the petitioner's claims should have been raised by way of a motion in coram nobis rather than habeas. The court disagreed with the latter claim but did not vacate its decision. 197 Or. at 331-33, 350, 251 P.2d 87.

In Barber , for example, the court considered whether a criminal statute was vague in violation of due process, whether a statute that authorized omitting a description of the crime violated due process, whether a punishment was cruel and unusual, and whether lesser sentences for codefendants convicted under a different statute violated equal protection. See id. at 57-58, 309 P.2d 192, 298 P.2d 986. The court found that none of petitioner's various claims had any merit.

The specific question in Fair was whether a new constitutional rule should be applied retroactively on direct appeal. However, in stating the rule quoted above, the court surveyed and cited its post-conviction decisions. See Fair , 263 Or. at 387 nn. 6 & 7, 502 P.2d 1150. We accordingly conclude that the retroactivity rule that Fair stated applies equally to post-conviction proceedings.