Argued and submitted March 6, decision of Court of Appeals and judgment of circuit court affirmed October 1, 2020

ERNIE JUNIOR PEREZ,
*Petitioner on Review,*

*v.*

Brad CAIN,
Superintendent,
Snake River Correctional Institution,
*Respondent on Review.*

(CC 16CV29849) (CA A164434) (SC S067002)

473 P3d 540

Petitioner sought post-conviction relief, advancing constitutional claims founded on the interpretation of a statute governing waiver of juveniles to adult court in *State v. J.C.N.-V.*, 359 Or 559, 380 P3d 248 (2016). Petitioner argues that, although his petition was successive and untimely, he could not reasonably have raised his claims earlier—and that he therefore satisfied the relevant exceptions allowing successive and untimely claims in ORS 138.510(3) and ORS 138.550(3)—because *J.C.N.-V.* was a surprising and novel decision. *Held*: (1) Petitioner could reasonably have raised his claims in his first post-conviction petition; and (2) petitioner's age was not a factor under the successive petitions bar when petitioner was represented by counsel in his first post-conviction relief proceeding.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

En Banc

On review from the Court of Appeals.*

Jedediah Peterson, O'Connor Weber LLC, Portland, argued the cause and filed the brief for petitioner on review.

Ryan Kahn, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

GARRETT, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

––––––––––––
* On appeal from the Malheur County Circuit Court, Erin K. Landis, Judge. 297 Or App 617, 444 P3d 506 (2019).

**GARRETT, J.**

Petitioner pleaded guilty in 2005 to two aggravated murders that he had committed at the age of 14. In 2016, he filed a petition for post-conviction relief raising constitutional claims premised on this court's interpretation of ORS 419C.349, a statute governing when a juvenile defendant can be waived into adult court, in *State v. J. C. N.-V.*, 359 Or 559, 380 P3d 248 (2016). The post-conviction court concluded that petitioner's claims were barred by the claim preclusion rule in ORS 138.550(3) because petitioner could reasonably have raised those claims in an earlier petition that he had filed in 2008. For similar reasons, the post-conviction court held that the claims were barred by the statute of limitations set out in ORS 138.510(3). The Court of Appeals affirmed. *Perez v. Cain*, 297 Or App 617, 444 P3d 506 (2019).

We allowed review to address petitioner's argument that his claims could not reasonably have been raised prior to this court's decision in *J. C. N.-V.*, so as to allow him to escape the application of the statute of limitations in ORS 138.510(3) and the claim preclusion bar in ORS 138.550(3). As explained below, we conclude that petitioner's claims are barred by ORS 138.550(3) because he has failed to show that he could not reasonably have raised those claims at the time of his 2008 petition. We therefore affirm the decision of the Court of Appeals and the judgment of the post-conviction court.

## I.   BACKGROUND

In 2005, petitioner broke into a home; during the home invasion he shot and killed two people. At the time, he was 14 years old. Because of his age, proceedings against him were initiated in juvenile court. The state sought to waive him into adult court on multiple charges of aggravated murder. *See* ORS 419C.352 (2005) (permitting a youth under 15 years of age to be waived into adult court when the youth is alleged to have committed certain crimes, including aggravated murder). As part of a plea agreement, petitioner stipulated to a waiver to adult court; the juvenile court found that the criteria for waiver set out in ORS 419C.349(3)-(4) (2005) were satisfied, including that petitioner "at the time of the alleged offense was of sufficient sophistication and

maturity to appreciate the nature and quality of the conduct involved." ORS 419C.349(3) (2005). The juvenile court based its conclusion on a waiver study by the Marion County Juvenile Department, which had evaluated petitioner based on the criteria set out in an appendix to the United States Supreme Court's decision in *Kent v. United States*, 383 US 541, 565, 86 S Ct 1045, 16 L Ed 2d 84 (1966).[1]

Petitioner entered a guilty plea to four counts of aggravated murder.[2] He was sentenced to two terms of life with the possibility of parole after 30 years, with 20 years of the second sentence to be served consecutive to the first. The Court of Appeals affirmed his convictions and sentence without opinion in 2007. *State v. Perez*, 214 Or App 571, 166 P3d 607 (2007). Petitioner did not seek review in this court.

In 2008, petitioner filed a timely petition for post-conviction relief, initiating a proceeding in which he was represented by counsel. Petitioner alleged, among other things, that his trial counsel had been inadequate and ineffective in advising him to stipulate to the waiver to adult court. However, he did not raise a claim that the juvenile court had applied the wrong standard in permitting the waiver. In 2011, the post-conviction court granted relief in part, modifying a provision in the original judgment, but otherwise denied relief.

In 2016, this court decided *J. C. N.-V.* Shortly thereafter, petitioner filed a second petition for post-conviction relief. He alleged that the trial court had violated Article I, section 20, of the Oregon Constitution and the Equal Protection and Due Process Clauses of the United States Constitution by failing to conduct a waiver analysis

---

[1] In *Kent*, the Supreme Court held that a "waiver decision implicated the juvenile's due process rights" and "appended to its decision a set of criteria that juvenile courts in the District of Columbia had used in deciding waiver issues[.]" *J. C. N.-V.*, 359 Or at 582. The Marion County Juvenile Department's waiver study applied those criteria to the available information about petitioner and his crimes.

[2] The four charges of aggravated murder represented two theories of aggravated murder for each victim. After petitioner entered a guilty plea, the trial court, based on *State v. Barrett*, 331 Or 27, 10 P3d 901 (2000), *overruled in part on other grounds by Martinez v. Cain*, 366 Or 136, 458 P3d 670 (2020), merged the four counts into two convictions.

consistent with that required by this court's decision in
*J. C. N.-V.*[3]

The superintendent filed a motion to dismiss, argu-
ing that the petition was successive and therefore barred
by the claim preclusion rule found in ORS 138.550(3). That
statute provides that

"[a]ll grounds for relief claimed by petitioner in a [petition
for post-conviction relief] must be asserted in the original
or amended petition, and any grounds not so asserted are
deemed waived unless the court on hearing a subsequent
petition finds grounds for relief asserted therein which
could not reasonably have been raised in the original or
amended petition."

In addition, the superintendent argued that the petition was
untimely and therefore barred by the statute of limitations
found in ORS 138.510(3).[4] ORS 138.510(3) provides, as perti-
nent here, that a petition for post-conviction relief

"must be filed within two years of the following, unless the
court on hearing a subsequent petition finds grounds for
relief asserted which could not reasonably have been raised
in the original or amended petition:

"(a)   If no appeal is taken, the date the judgment or
order on the conviction was entered in the register.

"(b)   If an appeal is taken, the date the appeal is final
in the Oregon appellate courts."

---

[3] Petitioner also alleged that his trial counsel was inadequate and ineffec-
tive in failing to argue for a waiver determination consistent with *J. C. N.-V.* In
the Court of Appeals, petitioner conceded that that claim was without merit,
and he has not sought to have the post-conviction court's dismissal of that claim
reversed.

[4] The superintendent also argued that petitioner's Article I, section 20,
equal protection, and due process claims were barred by *Palmer v. State of
Oregon*, 318 Or 352, 867 P2d 1368 (1994), because those arguments could
have been raised in the juvenile court. The post-conviction court also cited
*Palmer* as a basis for dismissing the petition for relief and, although the
Court of Appeals did not expressly rely on *Palmer*, some of its reasoning could
be understood as concluding that petitioner's claim was barred by *Palmer*, as
well as by ORS 138.510(3) and ORS 138.550(3). *See Perez*, 297 Or App at 626
("[T]he undisputed facts tend to suggest that petitioner's claim is one that rea-
sonably could have been raised at the time of the underlying juvenile court pro-
ceedings."). In this court, both parties have focused on ORS 138.510(3) and ORS
138.550(3); because we affirm the post-conviction court based on ORS 138.550(3),
we do not address *Palmer*.

Petitioner conceded that his petition was successive and untimely. He argued, however, that his new claims were covered by the exceptions in both ORS 138.510(3) and ORS 138.550(3)—which we have referred to as the "escape clause[s]," *Bartz v. State of Oregon*, 314 Or 353, 359, 839 P2d 217 (1992) (internal quotation marks omitted)—that allow "grounds for relief" to be raised if they "could not reasonably have been raised in the original or amended petition." He argued that he could not reasonably have raised his claims prior to this court's 2016 decision in *J. C. N.-V.*

The post-conviction court concluded that the petition was successive and untimely, and it held that the escape clauses did not apply. It therefore dismissed the petition for post-conviction relief.

Petitioner appealed, assigning error to, among other things, the post-conviction court's dismissal of the case. He argued that the escape clauses applied to his claims because they rested on a legal principle—the interpretation of ORS 419C.349 in *J. C. N.-V.*—that was not reasonably available to him at the time of his appeal or first post-conviction petition.[5]

The superintendent responded that petitioner could have raised his escape-clause argument at the time of his first post-conviction proceeding and within two years of his conviction becoming final. The superintendent argued that, prior to *J. C. N.-V.*, "no appellate authority foreclosed the argument that the Supreme Court endorsed in that case," and all of the statutory construction principles and materials relied on in *J. C. N.-V.* were available to petitioner before that case was decided.

The Court of Appeals affirmed. *Perez,* 297 Or App 617. In reaching that conclusion, the Court of Appeals gave substantial weight to the waiver study on which the trial court had relied in waiving petitioner into adult court, noting that the study had conducted the type of analysis that

---

[5] In both the post-conviction court and the Court of Appeals, petitioner, by choice, represented himself. The Court of Appeals solicited an *amicus* brief to assist in its consideration of the escape clause issue. In this court, petitioner is represented by counsel.

this court said was required in *J. C. N.-V. Id.* at 625-26. The Court of Appeals reasoned that

> "[t]he waiver study put at issue the application of the *Kent* criteria, making it reasonably possible for petitioner to raise any issues regarding the juvenile court's inquiry under those criteria long before the Supreme Court's decision in *J. C. N.-V.*; in fact, given that the waiver study was based on the *Kent* criteria, it is not wholly implausible to think that, but for petitioner's stipulation to the waiver into adult court, the court would have conducted 'the kind of inquiry contemplated by the *Kent* criterion' that the *J. C. N.-V.* court held is required."

*Id.* at 626. The Court of Appeals also noted that petitioner's first post-conviction proceeding occurred contemporaneously with the juvenile court proceedings in *J. C. N.-V. Id.* The Court of Appeals therefore concluded that petitioner's claims did not fall within the escape clauses. *Id.*

Petitioner filed a petition for review, arguing that the Court of Appeals had erred in its application of the escape clauses.[6] We allowed the petition for review. We now affirm the decision of the post-conviction court, although based on reasoning somewhat different than that of the Court of Appeals.

## II.   ANALYSIS

We begin—and, because it is dispositive, end—with the claim preclusion bar contained in ORS 138.550(3):

> "All grounds for relief claimed by petitioner in a petition pursuant to ORS 138.510 to 138.680 must be asserted in the original or amended petition, and any grounds not so asserted are deemed waived unless the court on hearing a subsequent petition finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition."

Because this is petitioner's second petition for post-conviction relief, ORS 138.550(3) prevents him from raising any claims

---

[6] Petitioner also asked this court to address whether retroactivity principles precluded relief on his claims. In light of our conclusion that the post-conviction court properly dismissed those claims under ORS 138.550(3), we do not reach that argument.

that he could have brought in his first post-conviction petition, unless the claim "could not reasonably have been raised" in the earlier petition. To obtain consideration of any claims in this new petition, petitioner must show that that exception applies to the claim.

As he did below, petitioner argues that the escape clause applies in this case because petitioner's claims rest, in part, on this court's decision in *J. C. N.-V.* Petitioner contends that this court's decision in *J. C. N.-V.* was novel and surprising, and that it established legal principles that could not reasonably have been anticipated at the time of petitioner's first post-conviction petition. In addition, petitioner argues that, because he was 14 at the time of the original waiver and 18 at the time of the expiration of the statute of limitations, his youth should factor into the analysis.[7]

The first strand of argument implicates three recent decisions of this court which, together, demarcate when a new judicial pronouncement may give a post-conviction petitioner the ability to satisfy the escape clause. To address petitioner's argument, we review those cases and the principles that they establish.

A.   *The Escape Clause*

The first of those cases is *Verduzco v. State of Oregon*, 357 Or 553, 355 P3d 902 (2015). In *Verduzco*, the petitioner brought a claim of ineffective assistance of counsel, arguing that his trial counsel had performed deficiently by failing to advise him of the immigration consequences of his guilty plea. *Id.* at 559-60. In making that claim, the petitioner relied on the then-recent decision of the United States Supreme Court in *Padilla v. Kentucky*, 559 US 356, 130 S Ct 1473, 176 L Ed 2d 284 (2010), which held that the failure to advise a defendant of clear deportation consequences may constitute ineffective assistance of counsel.

---

[7] Petitioner also argues that his claim could not be raised in his initial post-conviction proceeding because it would have been barred by *Palmer*. That argument is unpreserved, and we do not address it other than by noting that if any of petitioner's claims were barred by *Palmer* in that proceeding—because petitioner "reasonably could have been expected to raise" that issue in the trial court, *Palmer*, 318 Or at 358—the claim would be barred by *Palmer* in this proceeding as well.

However, the petitioner had filed a previous post-conviction petition, shortly before *Padilla* was decided, in which he had raised the same claim. *Verduzco*, 357 Or at 557-58. We held that ORS 138.550(3) barred the *Padilla* claim made in the new petition. In reaching that conclusion, we reviewed the text, context, and legislative history of the escape clause to ORS 138.550(3) and adopted as our own an analysis set out in a prior Court of Appeals decision:

> "'The touchstone is not whether a particular question is *settled*, but whether it reasonably is to be *anticipated* so that it can be raised and settled accordingly. The more settled and familiar a constitutional or other principle on which a claim is based, the more likely the claim reasonably should have been anticipated and raised. Conversely, if the constitutional principle is a new one, or if its extension to a particular statute, circumstance, or setting is novel, unprecedented, or surprising, then the more likely the conclusion that the claim reasonably could not have been raised.'"

*Verduzco*, 357 Or at 571 (quoting *Long v. Armenakis*, 166 Or App 94, 101, 999 P2d 461 (2000)) (emphases in original). However, we did not apply that analysis to the petitioner's claim in *Verduzco* because the petitioner had raised the same claim in an earlier petition. We reasoned that the escape clause did not apply because, "[h]aving raised those grounds for relief in his first post-conviction petition, [the petitioner] cannot claim that he could not reasonably have raised them [in that petition]." 357 Or at 573.

*Chavez v. State of Oregon*, 364 Or 654, 438 P3d 381 (2019), like *Verduzco*, concerned a claim that the petitioner's trial counsel had failed to provide specific advice about the deportation consequences of a guilty plea. In *Chavez*, the claim was brought in an untimely, but not successive, petition, so the only procedural bar to relief was the statute of limitations in ORS 138.510(3). 364 Or at 658. The statute of limitations had expired in 2001—two years after the petitioner's conviction became final, in 1999. *Id.* at 659. As in *Verduzco*, the question before this court was whether the petitioner's claim qualified for the escape clause because the petitioner could not reasonably have raised the claim earlier.

To determine whether the petitioner could reasonably have raised his claim during the statute of limitations period, we reviewed the state of the law with respect to petitioner's claim between 1999 and 2001. *Chavez*, 364 Or at 659-61. In *Lyons v. Pearce*, 298 Or 554, 694 P2d 969 (1985), we had held, under the Oregon Constitution, that a defense attorney has a duty to advise noncitizen clients that a guilty plea may result in deportation. But we had not held, as *Padilla* ultimately would in 2010, that more specific advice about the immigration consequences of the plea was sometimes required. At the time that the statute of limitations on the petitioner's claim expired, no Oregon appellate decision had addressed whether the Oregon Constitution or the Sixth Amendment imposed that "higher requirement on counsel," 364 Or at 661, although this court would subsequently hold that the Oregon Constitution did not impose such a requirement, in *Gonzalez v. State of Oregon*, 340 Or 452, 134 P3d 955 (2006).

We observed, however, that although no Oregon decision had addressed the issue, "the 'almost unanimou[s]' rule before *Padilla* was that a Sixth Amendment inadequate assistance claim based on the failure to advise a defendant of the immigration consequences of a guilty plea was simply not cognizable." *Chavez*, 364 Or at 663 (quoting *Chaidez v. United States*, 568 US 342, 350, 133 S Ct 1103, 185 L Ed 2d 149 (2013)) (alteration in *Chavez*). That is, most courts to consider the issue not only had rejected the rule adopted by the Supreme Court in *Padilla* but had rejected the more modest requirement—a general warning about deportation—that this court had imposed in *Lyons*. *Chavez*, 364 Or at 660-61.

Under those circumstances, we explained, the petitioner's claim could not reasonably have been raised in 2001:

"It is certainly true, as the state notes, that some litigants were raising similar claims before *Padilla*. However, those claims did not meet with success in the federal courts, and the question is not whether such a claim conceivably could have been raised. Rather, it is whether it reasonably could have been raised. As this court recognized in *Verduzco*, when the underlying principle is 'novel, unprecedented, or

surprising,' and not merely an extension of settled or familiar rules, the more likely it becomes that the ground for relief could not reasonably have been asserted."

*Id.* at 663 (citations omitted). Because, as of 2001, the rule ultimately announced in *Padilla* had been roundly rejected by numerous appellate courts, we concluded that the petitioner's claim based on *Padilla* could not reasonably have been raised within the statute of limitations.

We next addressed the meaning of the escape clauses in *White v. Premo (S065188)*, 365 Or 1, 443 P3d 597 (2019). *White* involved an Eighth Amendment challenge, based on *Miller v. Alabama*, 567 US 460, 132 S Ct 2455, 183 L Ed 2d 407 (2012), to a *de facto* life-without-parole sentence imposed in 1995 on a juvenile defendant who was convicted of murder.[8] The challenge was raised in a petition that was both untimely and successive, and the petitioner had appealed his original sentence, so the escape clauses of ORS 138.510(3), ORS 138.550(2),[9] and ORS 138.550(3) were all at issue. The question was whether, as the petitioner argued, his Eighth Amendment argument based on *Miller* could not reasonably have been raised in his previous requests for appellate and post-conviction relief.

To answer that question, we reviewed the state of Eighth Amendment jurisprudence regarding juveniles at the time of the petitioner's trial through to the present. We noted, first, that in *Stanford v. Kentucky*, 492 US 361, 109 S Ct 2969, 106 L Ed 2d 306 (1989), the Supreme Court had rejected an Eighth Amendment challenge to the execution of juvenile offenders older than 15. Further,

"*Stanford* remained the law until 12 years after petitioner's conviction and eight years after petitioner's first post-conviction petition, when in 2005, the Court decided *Roper*

---

[8] On the same date, we decided *White v. Premo (S065223)*, 365 Or 21, 443 P3d 608 (2019), which involved substantially the same legal issues, in the context of an analogous post-conviction challenge by the petitioner's twin brother.

[9] ORS 138.550(2) provides, in pertinent part, that

"[w]hen the petitioner sought and obtained direct appellate review of the conviction and sentence of the petitioner, no ground for relief may be asserted by petitioner in a petition for relief *** unless such ground was not asserted and could not reasonably have been asserted in the direct appellate review proceeding."

[*v. Simmons*, 543 US 551, 125 S Ct 1183, 161 L Ed 2d 1 (2005),] and held that the Eighth Amendment categorically prohibits states from putting juveniles to death."

*White*, 365 Or at 8. We then observed that, subsequently, in *Graham v. Florida*, 560 US 48, 130 S Ct 2011, 176 L Ed 2d 825 (2010), the Supreme Court had held that the Eighth Amendment also categorically prohibits sentencing juvenile offenders to life without parole for nonhomicide offenses. Finally, we recounted that in 2012, in *Miller*, the Court had extended the principles of *Graham* and *Roper* to juveniles convicted of homicide, holding that, although the Eighth Amendment does not categorically bar life-without-parole sentences, it does "require[] the sentencer 'to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.'" *White*, 365 Or at 9 (quoting *Miller*, 567 US at 480).

In light of that context, we were

"not convinced that petitioner reasonably could have asserted a *Miller* claim at the time of his direct appeal or his earlier post-conviction proceeding. At those times, the Court had not yet held that juveniles typically possess traits that make them less blameworthy than adults, and certainly had not held that mandatory life-without-parole sentences for juveniles who commit homicide violate the Eighth Amendment."

*White*, 365 Or at 11. As in *Chavez*, we noted that "the statutory question is not whether a claim *conceivably* could have been raised, but, rather, whether it *reasonably* could have been raised," *White*, 365 Or at 11, and we held that *Miller*, like *Padilla*, was a "'novel, unprecedented, [and] surprising'" decision given the state of the case law at the time of the earlier proceedings, *White*, 365 Or at 11 (quoting *Chavez*, 364 Or at 663) (alteration in *White*).

*Verduzco*, *Chavez*, and *White* guide our analysis here. In each of those cases, we looked to the state of the law at the time of the petitioner's earlier opportunity to raise the claim in order to determine whether the claim could reasonably have been raised at that time. If controlling case law

at the time would have precluded the claim—for example, as *Stanford* likely would have barred a *Miller* claim prior to 2005—that circumstance would counsel a conclusion that the claim could not reasonably have been raised at the time. But we have never held that the existence of a controlling decision precluding the claim is absolutely necessary to show that the claim could not reasonably have been raised. In *Chavez*, there was no controlling case precluding an Oregon petitioner from raising a *Padilla* claim during the statute-of-limitations period, but we nevertheless held that such a claim could not reasonably have been raised, in light of the near-unanimous consensus against such a claim in other jurisdictions.

B.    *State v. J. C. N.-V.*

Thus, to evaluate petitioner's argument in this case—that the rule that we adopted in *J. C. N.-V.* was so novel and surprising that a petitioner in 2008 could not reasonably have advanced an argument based on it—we examine the state of the case law and legal principles at that time, as well as the basis of our ultimate decision in *J. C. N.-V.*

The text at issue in *J. C. N.-V.* was the requirement in ORS 419C.349 that, before a juvenile can be waived into adult court, the juvenile court must find that "[t]he youth at the time of the alleged offense was of sufficient sophistication and maturity to appreciate the nature and quality of the conduct involved." That text was enacted as "part of a 1985 statute that both lowered the age when a juvenile might be waived into adult court and adopted more stringent standards for all waivers," *J. C. N.-V.*, 359 Or at 590, and it was codified at ORS 419C.349(3) at the time of petitioner's waiver hearing and when this court decided *J. C. N.-V.*[10] *See* Or Laws 2019, ch 635, § 3e (amending the statute such that the text in question now appears at ORS 419C.349(2)(a)).

Between 1985 and 2008, when petitioner filed his first post-conviction petition, neither this court nor the Court of Appeals had interpreted the phrase "sufficient sophistication and maturity to appreciate the nature and

_____

[10] All references in this opinion to ORS 419C.349(3) refer to the text of the statute at the time of those events.

quality of the conduct involved."[11] The first appellate decision to interpret that phrase was *State v. J. C. N.-V.*, 268 Or App 505, 342 P3d 1046 (2015), *rev'd*, 359 Or 559, 380 P3d 248 (2016), in which the *en banc* Court of Appeals considered whether the juvenile court misapplied ORS 419C.349 when it waived a 13-year-old youth to adult court after finding that he possessed average sophistication and maturity for his age. The Court of Appeals held that the juvenile court did not err, concluding that

> "[t]he text, context, and legislative history of ORS 419C.349(3) reflect the legislature's intent to allow waiver for those youths who, by nature of their sophistication and maturity, understand what they are doing in a physical sense and understand that their actions are wrong or will likely have criminal consequences."

*J. C. N.-V.*, 268 Or App at 539. In reaching that conclusion, the Court of Appeals focused on the phrase "nature and quality of the conduct," and relied on, among other indicia, its "well-worn legal meaning in the context of criminal capacity," *id.* at 518, dating back to its use to describe the common-law standard for the insanity defense in *M'Naghten's Case*, 10 Clark & Fin 200, 8 Eng Rep 718 (1843). Two judges dissented, stating that they would have held "that waiver was intended to apply only to those 'exceptional cases' in which the court had considered the youth's developmental capacity." 268 Or App at 555 (Egan, J., dissenting).

This court allowed review and reversed. In interpreting ORS 419C.349(3), we examined numerous sources of context. We noted that "the words 'nature and quality' may well have roots in the *M'Naghten* rule" but that, "although *M'Naghten* and other common-law criminal capacity cases referred almost uniformly to a capacity to 'know' the nature and wrongfulness of the conduct, the Oregon legislature,

---

[11] In *State ex rel Juv. Dept. v. Reed*, 124 Or App 495, 501 n 6, 863 P2d 1291 (1993), *rev den*, 318 Or 458 (1994), the Court of Appeals concluded, on *de novo* review, that the youth at issue in that case "understood the nature and quality of his conduct." But the Court of Appeals simply stated that conclusion, which was not contested in that case, without explaining what it understood the analysis to entail. Similarly, in *State ex rel Juv. Dept. v. George*, 124 Or App 257, 260 n 3, 862 P2d 531 (1993), the Court of Appeals accepted without elaboration the youth's concession that "he understood the nature and quality of his criminal conduct."

in enacting ORS 419C.349(3), chose a different word—
'appreciate.'" *J. C. N.-V.*, 359 Or at 580.

We also looked to the Supreme Court's decision in *Kent*, which had held that a "waiver decision implicated the juvenile's due process rights," *J. C. N.-V.*, 359 Or at 582, and had "appended to its decision a set of criteria that juvenile courts in the District of Columbia had used in deciding waiver issues, hinting that due process would be served if juvenile courts based their waiver decisions on such criteria." *Id.* We concluded that portions of ORS 419C.349, including the words "sophistication and maturity" in ORS 419C.349(3) (2015), were drawn from *Kent*, *J. C. N.-V.*, 359 Or at 582-83, which suggested "that the legislature intended that a court look for indicia of adult-like mental, social and emotional development as it relates to a youth's ability to 'appreciate the nature and quality of the conduct involved.'" 359 Or at 585 (quoting ORS 419C.439(3) (2015)).

We also examined other common law and statutory context, along with legislative history from 1983, 1985, and 1995. *J. C. N.-V.*, 359 Or at 585-97. We concluded that "the legislature intended to have a trial court determine, from the evidence presented, whether the youth in question has sufficient adult-like mental, social and emotional capabilities to appreciate the relevant conduct, its consequences and criminality." 359 Or at 599.

Petitioner argues that this court's decision in *J. C. N.-V.* was novel, unprecedented and surprising. He points first to the fact that, before the decisions in *J. C. N.-V.*, no appellate decision had interpreted the key phrase in ORS 419C.439(3). Petitioner argues that, before *J. C. N.-V.*, interpretation of ORS 419C.439(3) could have been informed by either *M'Naghten* or *Kent*, and that even *Kent* would not have suggested that "indicia of adult-like mental, social and emotional development," *J. C. N.-V.*, 359 Or at 585, were required.

We agree with petitioner that the meaning of ORS 419C.439(3) was not settled by any appellate decision prior to *J. C. N.-V.*, but that circumstance falls short of what is necessary to bring a claim within the escape clause. As we explained in *Verduzco*, "'[t]he touchstone is not whether a

particular question is *settled*, but whether it reasonably is to be *anticipated* so that it can be raised and settled accordingly.'" 357 Or at 571 (quoting *Long*, 166 Or App at 101) (emphases in original). Thus, the absence of a settled answer to a legal question is insufficient, on its own, to make a claim one that could not reasonably have been raised at an earlier time.[12]

We recognize that, if petitioner had raised his claims in 2008, a litigant opposing those claims could have argued that they were premised on an interpretation of ORS 419C.439(3) that was not supported by *M'Naghten* or *Kent*. He would not, at the time, have had access to an appellate decision that would conclusively resolve the meaning of ORS 419C.439(3) in his favor. But the fact that there may be a reasonable argument against a legal position does not mean that the position cannot reasonably be advanced. A claim reasonably can be raised even if it is not guaranteed to succeed.

To the extent that petitioner suggests that *J. C. N.-V.* interpreted ORS 419C.439(3) in a surprising manner that did not follow from *Kent* or the other interpretive materials relied on in the decision—such that the possible success of the argument could not reasonably be anticipated—we disagree. As this court explained in *J. C. N.-V.*, the *Kent* factors

> "required a court to consider 'the sophistication and maturity of the juvenile' as an independent criterion relevant to a waiver decision, indicating that the court should consider the full panoply of a youth's capabilities that indicate 'maturity' and 'sophistication.' Based on the ordinary meaning of those terms, those capabilities would be the capabilities of normal adults that evidence heightened worldliness and discernment. Because those terms were used to determine, among other things, whether a youth was sufficiently blameworthy to stand trial as an adult, it seems logical that they would include adult-like traits that relate to traditional notions of blameworthiness beyond those necessary to establish criminal responsibility, such as capacities for premeditation and planning, impulse control,

---

[12] We note that whether a claim reasonably could have been raised is distinct from the question, relevant in inadequate assistance of counsel cases, of whether counsel's failure to advocate for a position "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 US 668, 688, 104 S Ct 2052, 80 L Ed 2d 674 (1984).

independent judgment, and a more hardened personality and outlook. Given our understanding that the statutory phrase 'sophistication and maturity' came from the *Kent* criteria, it is logical to understand the phrase as requiring an inquiry into the extent to which a juvenile's mental, social and emotional developmental capabilities indicate adult-like capabilities indicative of blameworthiness."

*J. C. N.-V.*, 359 Or at 583-84 (footnote omitted). That is, *J. C. N.-V.* itself explained that its interpretation of the statute followed logically from the legislature's use of a phrase drawn from the *Kent* criteria.

This case thus differs markedly from those in which we have held that an intervening change in case law was sufficiently novel or surprising that a petitioner's claim based on the change in law could not reasonably have been asserted earlier. In *Padilla*, the Supreme Court issued a holding at odds with the conclusion previously reached by "[a]ll 10 federal appellate courts to consider the question" and "[a]ppellate courts in almost 30 States." *Chaidez*, 568 US at 350-51. *Miller* represented the culmination of a dramatic and rapid shift in the Supreme Court's treatment of Eighth Amendment claims by juvenile defendants. Between 2005 and 2012, governing case law developed from *Stanford*'s rule that execution of juveniles was constitutionally permissible to *Miller*'s holding that, even in homicide cases, "a lifetime in prison is a disproportionate sentence for all but the rarest of children[.]" *Montgomery v. Louisiana*, 577 US 190, 195, 136 S Ct 718, 726, 193 L Ed 2d 599 (2016). In contrast, *J. C. N.-V.* interpreted a longstanding statute for the first time, based on interpretive materials and tools that were readily available in 2008.[13]

---

[13] The Court of Appeals relied on the fact that the waiver study presented to the juvenile court in petitioner's case cited *Kent* and conducted an analysis based on *Kent* principles. The Court of Appeals may well be correct that "it is not wholly implausible to think that, but for petitioner's stipulation to the waiver into adult court, the court would have conducted 'the kind of inquiry contemplated by the *Kent* criterion' that the *J. C. N.-V.* court held is required," 297 Or App at 626 (quoting *J. C. N.-V.*, 359 Or at 585), but that observation is more pertinent to the merits of petitioner's claims than to the question whether he could have raised them in his 2008 post-conviction proceeding. We do not rest our decision on the fact that the "waiver study put at issue the application of the *Kent* criteria," *Id*. All of the materials relied on in *J. C. N.-V.* were reasonably available to an attorney who wanted to make the argument, regardless of whether *Kent* was cited in a document in the juvenile court.

Petitioner also argues that, even if the question was an open one for purposes of appeal in 2008, his claims still could not reasonably have been raised because the rule adopted in *J. C. N.-V.* was contrary to the standard practice in juvenile courts at the time (and petitioner reads *J. C. N.-V.* to so imply). Assuming *arguendo* that petitioner's premise is correct, we still conclude that petitioner could reasonably have raised his claims. The question under ORS 138.550(3) is not whether a claim based on *J. C. N.-V.* could reasonably have been raised in the juvenile court proceeding, but whether it could reasonably have been raised in his 2008 post-conviction proceeding. Had that post-conviction court rejected a claim based on its construction of ORS 419C.439(3), nothing would have prevented petitioner from filing an appeal, *see* ORS 138.650 (permitting an appeal of a post-conviction judgment), and, for reasons we have already discussed, nothing in the state of the case law at that time justifies a conclusion that petitioner could not reasonably have argued for the interpretation of ORS 419C.439(3) that we later adopted in *J. C. N.-V.* The judicial process does not conclude at the trial level, and an inquiry into what claims reasonably could have been raised cannot rest on a contrary assumption.

## C.   *Petitioner's Age*

Petitioner also argues that the escape clause analysis should take into account his age. Because he was 17 or 18 at the time of his first petition for post-conviction relief, petitioner argues that we should consider the fact that "his status as a youth would have made it even more difficult to comprehend the significance of the statute or understand the ways in which he was prejudiced by its application to him." In support of that argument, he relies on our decision in *Gutale v. State of Oregon*, 364 Or 502, 435 P3d 728 (2019). The superintendent argues that the argument is unpreserved, and that, in any event, petitioner's age at the time plays no role in the analysis.

Petitioner was represented by counsel in his first post-conviction proceeding. As we have explained,

"[i]n *Verduzco*, *Eklof* [*v. Steward*, 360 Or 717, 385 P3d 1074 (2016)], and our other cases applying the escape clause to

the bar on successive petitions, we have considered whether a ground for relief reasonably could have been raised from the point of view of counsel. As noted, ORS 138.550(3) codifies claim preclusion principles: It addresses the question of whether a petitioner who already has litigated a petition for post-conviction relief may return to court and litigate a second time, and it provides that a petitioner may not do so where counsel reasonably could have raised the grounds at issue in that prior litigation."

*Gutale*, 364 Or at 518 (citation omitted). Under ORS 138.550(3), as in *Verduzco* and *White*, we analyze whether a claim reasonably could have been raised from counsel's perspective; petitioner's age and other personal characteristics have no role in the analysis. *Gutale* carved out an exception to that general rule, and did so by expressly contrasting the circumstances in that case with those present here:

"By contrast, when the bar on successive petitions does not apply, the inquiry under the escape clause to the statute of limitations is whether a petitioner reasonably could have raised a ground for *relief before any litigation has occurred*. The focus of the reasonableness inquiry is therefore the petitioner, rather than an attorney representing the petitioner."

364 Or at 518-19. That is, to the extent that *Gutale* made the petitioner the subject of the reasonableness inquiry, it did so only for the escape clause in ORS 138.510(3), and in a case where the petitioner had not been represented by counsel in either an appeal or a prior post-conviction proceeding. Here, as in *White* and *Verduzco*, petitioner was represented by counsel in his first post-conviction proceeding, and the appropriate question is whether he reasonably could, through counsel, have raised the claims. Accordingly, petitioner's age at the time of his first post-conviction petition cannot alter the above analysis.

### III.   CONCLUSION

For the reasons given above, we reject petitioner's argument that he could not reasonably have raised his post-conviction claims in his first post-conviction petition. Because those claims could have been raised in the prior post-conviction proceeding, they "are deemed waived" and

cannot be raised in this proceeding. ORS 138.550(3). The post-conviction court therefore correctly dismissed petitioner's second petition.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.